## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SECRETT HAMPTON | : | CIVIL NO. 3:18CV01445(VAB) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| JUDICIAL BRANCH, STEPHEN GRANT, | : | |
| DEBORAH FULLER and | : | |
| JOHN FITZGERALD | : | |
| *Defendants* | : | January 16, 2019 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6), the Defendants, State of Connecticut Judicial Branch ("Judicial"), Stephen Grant ("Grant"), Deborah Fuller ("Fuller") and John Fitzgerald ("Fitzgerald") (hereinafter collectively referred to as "Defendants") hereby submit this Memorandum of Law in support of their Motion to Dismiss. The Plaintiff, Secrett Hampton ("Plaintiff" or "Hampton"), filed a Complaint against the Defendants arising out of her employment as a Judicial Detention Transportation Officer. The Plaintiff sets forth a five (5) count Complaint.

For the reasons set forth in the below, the Defendants now move to dismiss the Plaintiff's Complaint in its entirety on the following grounds:

A. The Court lacks subject matter jurisdiction over all Defendants for Counts Two, Three and Four since same are barred by the doctrine of sovereign immunity;

B. The Court lacks personal jurisdiction over Defendant Grant in his individual capacity as asserted in counts One, Three and Five, due lack of service of process;

C. Counts One and Two are barred since the Plaintiff failed to exhaust her administrative remedies;

D. Plaintiff's claim for Intentional Infliction of Emotional Distress in Count Four fails to state a claim upon which relief can be granted;

E. Plaintiff's 42 U.S.C. §1983 claim in Count Five fails to state a claim upon which relief can be granted;

F. The 42 U.S.C. § 1981 claim must be dismissed since 42 U.S.C. § 1983 is the exclusive remedy;

G. The Plaintiff is not entitled to punitive damages against Judicial, a state agency; and

H. The Plaintiff is not entitled to a jury trial as to equitable relief under Title VII or CFEPA.

In Count One against all Defendants, the Plaintiff alleges that she was discriminated against on the basis of her race, color, gender, and ethnicity and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e ("Title VII").  In Count Two, against Judicial, Plaintiff alleges that she was discriminated against in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), General Statutes § 46a-60, et seq.  In Count Three, against all Defendants, the Plaintiff sets forth a common law claim of failure to train, screen, hire or supervise their employees. In Count Four, the Plaintiff sets forth a claim of intentional infliction of emotional distress against Defendants Grant, Fuller and Fitzgerald ("Individual Defendants") in their official capacities.  Count Five is an equal protection, due process claim pursuant to 42 U.S.C. §§ 1981 and 1983 against Defendants Grant, Fuller and Fitzgerald in their individual capacities.

## I.    <u>FACTS</u>

The Plaintiff filed the present Complaint on August 24, 2018 (Doc. # 1).   In the Complaint, the Plaintiff alleges that at all times relevant to this action she was employed as a Juvenile Detention Transportation Officer ("JTO") (Complaint, ¶ 12).  The Plaintiff alleges that she is an African American female. (Complaint, ¶ 9).   Plaintiff alleges that as an African American female she was subjected to discriminatory and hostile treatment at the workplace and harsher discipline up to and including termination than her non-African American counterparts. (Complaint, ¶ 14).   The Plaintiff alleges that she and her transportation partner, Aquil Abdul-Salaam, were transporting a physically violent inmate on or about October 21, 2016 to a medical appointment where he escaped custody. (Complaint, ¶¶ 15-21).  Plaintiff alleges that she and her co-worker returned to their work location and completed incident reports of the escape. (Complaint, ¶ 24).  Plaintiff alleges later that day she was approached by Fitzgerald and Jimmy Gomez, shift supervisor, and that she was told to hand in her badge and she was placed on unpaid administrative leave prior to any investigation. (Complaint, ¶¶ 25-27).

Plaintiff alleges the Defendants reported to the Department of Children and Families ("DCF") alleging physical and emotional neglect of the inmate and that the DCF found neglect on part of the Plaintiff.  The finding was appealed.  (Complaint, ¶¶ 28-29). Plaintiff alleges that on February 3, 2017 the Defendants terminated the Plaintiff's employment. (Complaint, ¶ 31). Plaintiff alleges that Fuller and Fitzgerald recommended the termination of the Plaintiff and that Grant, Executive Director, Court Support Services Division of Judicial, made the final decision to terminate the Plaintiff. (Complaint, ¶¶ 32-33).  Plaintiff alleges the finding by DCF was set aside on April 2, 2018 (Complaint, ¶ 34) and that on May 23, 2018, pursuant to Union

arbitration, the Plaintiff's termination and a substantial portion of the Plaintiff's unpaid suspension was reversed by an arbitration award. (Complaint, ¶ 37).

In response to the Complaint, the Defendants now submit this Motion to Dismiss, and request that the court dismiss the Complaint in its entirety.

## II.   <u>ARGUMENT</u>

### STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1),12(b)(2), 12(b)(5) AND 12(b)(6)

Under FRCP 12(b)(1) a party may move to dismiss a matter for lack of subject matter jurisdiction.   Under 12(b)(2) a party may move to dismiss a matter for lack of personal jurisdiction.   Under 12(b)(5) a party may move to dismiss a matter for insufficient service of process. Under FRCP 12(b)(6) a party may move to dismiss a matter for failure to state a claim upon which relief may be granted.

#### 1.   <u>*FRCP 12(b)(1)*</u>

A case is properly dismissed for lack of jurisdiction under Federal Rules of Civil Procedure, Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  The plaintiff, as the party asserting jurisdiction, has the burden of establishing by a preponderance of the evidence that such jurisdiction exists.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  In analyzing a motion to dismiss pursuant to Rule 12(b)(1), the Court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations."  *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir. 1994).  However, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l*, 968 F.2d 196, 198 (2d Cir. 1992); *see also Robinson,* 21 F.3d at 507.  Moreover, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a

district may, if necessary, refer to evidence outside the pleadings.  *Makarova*, 201 F.3d at 113.

Lack of subject matter jurisdiction is never waived.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3). "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court sua sponte. If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action."  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008), citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976).

### 2.  *FRCP 12(b)(2)*

"Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over him." *Lebron v. Encarnacion*, No. 16-CV-4666(ADS)(ARL), 2017 WL 2352856, at *1 (E.D.N.Y. May 31, 2017).  "'When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'" *DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001) quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, *see* Fed.R.Civ.P. 11, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  In considering a Rule 12(b)(2) motion to dismiss, the trial court must accept as true  all *undisputed* factual allegations supporting personal jurisdiction. *Pitruzello v. Muro*, 70 Conn. App. 309, 315 (2002).   However, trial courts do not accept as true *disputed* factual allegations at this stage  *Id.*

### 3. *FRCP 12(b)(5)*

"'Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process.'" *Hallums v. Dep't of Veterans Affairs*, No. 3:15-CV-841(VAB), 2017 WL 1230841, at *2 (D. Conn. Mar. 30, 2017) quoting *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D. Conn. 2007). "'A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.'" *Soos v. Niagara Cty.*, 195 F. Supp. 3d 458, 463 (W.D.N.Y. 2016) quoting *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015).

"'A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service.' 'Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Hallum,* 2017 WL 1230841, at *2 quoting *Rzayeva,* 492 F.Supp.2d at 74. "Conclusory statements that a defendant was properly served are insufficient to meet that burden.' 'In resolving the motion, the court must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service.'" *Ferran v. City of Albany*, No. 114CV1362GLSATB, 2016 WL 7378915, at *4 (N.D.N.Y. Dec. 20, 2016) quoting *Flemming v. Moulton*, No. 9:13-CV-1324, 2015 WL 5147035, at *4 (N.D.N.Y. Sept. 1, 2015).

### 4. *FRCP 12(b)(6)*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Internal citations omitted) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  However, Courts do not accept as true the Plaintiff's legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly,* the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (Internal citation and quotation omitted) *Iqbal*, 556 U.S. at 677-78.

In ruling on a 12(b)(6) motion, the Court may consider the complaint, any exhibits attached to the complaint, and any documents explicitly or implicitly incorporated into the complaint by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.'" *Id.* at 153 quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

## LEGAL ARGUMENT ON GROUNDS FOR DISMISSAL

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL DEFENDANTS FOR COUNTS TWO, THREE AND FOUR SINCE SAME ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

### COUNT TWO

In Count Two, the Plaintiff alleges that Judicial violated CFEPA because of its alleged discrimination against the Plaintiff.  Judicial, a State agency, has not assented to be sued under CFEPA and thus the Plaintiff cannot assert CFEPA claims in federal court.  It is well-established that CFEPA claims are barred in federal court against state agencies by the Eleventh Amendment.  *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 119-21 (1884); *Baker v. Coughlin*, 77 F.3d 12, 15 n.3 (2d Cir. 1996); see also *Walker v. State of Connecticut*, 106 F. Supp. 2d 364 (D. Conn. 2000) (Connecticut has not waived its Eleventh Amendment immunity in federal courts).

Moreover, in enacting the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-59 et seq., the State of Connecticut did not waive its Eleventh Amendment immunity to suits in federal court.  Indeed, sections 46a-99 and 46a-100 expressly limit suits to redress violations of CFEPA to actions brought in the state Superior Courts.  Section 46a-100 states:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83 or 46-101, **may also bring an action in the superior court for the judicial district in which the discriminatory practice** is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the judicial district of Hartford.

Conn. Gen. Stat. § 46a-100 (emphasis added).

The issue of the state's waiver of its immunity for redress of CFEPA claims in federal courts was addressed by this court in the case of *Walker v. State of Connecticut*, 106 F. Supp. 2d 364 (D. Conn. 2000).  In *Walker*, a former deputy sheriff sued the department and county

officials in federal court for the alleged discriminatory practices prohibited by Title VII of the

Civil Rights Act of 1964 and for alleged violations of CFEPA.  In holding that the Eleventh

Amendment barred the CFEPA state law claims, the court stated:

> Counts Four and Eight of the Complaint allege violations of the CFEPA.  The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum.  The State has waived its immunity, but only as to cases brought in the Superior Court.  Conn. Gen. Stat. Section 46a-99 provides that:

> Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, in-inclusive, may petition the **superior court** for appropriate relief and **said court** shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable.

> 'A state does not consent to suit in federal court by consenting to suit in the courts of its own creation.' *Smith v. Reeves*, 178 U.S. 436, 441-445, 20 S. Ct. 919, 44 L.Ed. 1140, (1900).  This Court declines Plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it *a fortiori* must have meant to consent to federal jurisdiction also.  '[I]t is not consonant with our dual system for the federal courts. . .to read the consent to embrace federal as well as state courts . . .[A] **clear declaration** of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.'  *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct 873, 88 L.Ed. 1121 (1944)(emphasis added), quoted in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100n. 9, 104 S. Ct 900, 79 L.Ed.2d 67 (1983). The Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by *Great Northern*.   Summary judgment will be granted on the CFEPA claims as to the State and all Defendants in both their individual and official capacities, as **this Court lacks jurisdiction over the parties based on the clear reading of the statue**.

*Id*. at 370 (emphasis in original and emphasis added.).

    In *Camblard v. Children and Families*, 2011 WL 3163581 (D. Conn. 2011), District

Court Judge Janet C. Hall followed *Walker* and held that the language of CFEPA did not "rise to

the level of the clear declaration required" for a waiver of Eleventh Amendment immunity, and

"consequently, Connecticut has not waived its immunity in the federal courts."

More recently, in *Owoeye v. Connecticut*, No. 3:14-CV-0664 (VLB), 2016 WL 1089179, at *3–4 (D. Conn. Mar. 18, 2016), District Court Judge Vanessa A. Bryant also found that the Eleventh Amendment "provides immunity for states against suits in federal court" and as such the pled CFEPA claims were dismissed against a State agency.

The same result should be reached in the present case.  The Plaintiff's state law claims predicated on violations of CFEPA against Defendant Judicial are barred by the Eleventh Amendment.  Judicial, a state agency, has not waived its Eleventh Amendment immunity.  The state has consented to suit on such claims only in state courts.   Because Plaintiff's claims of violations of Connecticut General Statutes §46a-60 are barred by the Eleventh Amendment, Count Two must be dismissed.

### <u>COUNTS THREE AND FOUR</u>

The Eleventh Amendment similarly bars Plaintiff's state law claims for infliction of emotional distress (IIED) (Count Three) and failure to train, screen, hire and/or supervise (Count Four).

It is well established that a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. *Davila v. Messier*, No. 3:13-CV-81 SRU, 2014 WL 4638854, at *3 (D. Conn. Sept. 17, 2014).

With respect to sovereign immunity, our Supreme Court has stated:  "[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent .... We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state."  (Citation omitted; internal quotation marks omitted.)  *Miller v. Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003).  "The doctrine of sovereign immunity [**115]

protects the state, not only from ultimate liability for alleged wrongs, but also from being required to litigate whether it is so liable, citing *Shay v. Rossi*, 253 Conn. at 165, 749 A.2d 1147]." (Internal quotation marks omitted.) *Tuchman v. State*, 89 Conn. App. 745, 751, 878 A.2d 384, *cert. denied*, 275 Conn. 920, 883 A.2d 1252 (2005). Nonetheless, our Supreme Court has recognized several limited exceptions to the state's immunity from suit, namely, when "(1) the legislature ... statutorily waived the state's sovereign immunity ... or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citation omitted.) *Miller v. Egan*, 265 at 313. If the Plaintiff is unable to establish the applicability of one of those exceptions, however, the doctrine of sovereign immunity protects the state from ultimate liability, as well as from having to litigate the claim. *Shay*, 253 Conn. at 165. *Manifold v Ragaglia*, 94 Conn. App. 103, 891 A.2d 106 (Conn. App. Ct. 2006). Connecticut courts have repeatedly held that common law actions for damages against the state are barred by sovereign immunity. *See Kearns v. State of Conn. Judicial Dep't.*, 2003 WL 21771744 at *4 (Conn. Super. Ct. June 24, 2004) (wrongful discharge barred by sovereign immunity); *Masih v. UCONN*, 1998 WL 599700 (Conn. Super. Ct. Aug. 24, 1998) (contract and tort claims barred by sovereign immunity).

The doctrine of sovereign immunity applies not only to the state, but also to its officers when they are acting in their official capacities. In such cases, the courts treat the Plaintiff's claims "as if they were solely against the state." *Sentner v. Board of Trustees*, 184 Conn. 339, 342 (1981); *see also Doe v. Heinz*, 204 Conn. 17, 32 (1987); *Ford Motor Co. v. Department of Treasury*, 232 U.S. 459, 464 (1945). Thus, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Antinerella v.*

*Rioux*, 44 Conn. Supp. 368, 370 (Conn. Super. Ct. 1995); *quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

To determine whether an action setting forth state law claims, is against the state or against a Defendant in his individual capacity, the court should examine the four criteria cited by the Connecticut Supreme Court  in *Spring v. Constantino*, 168 Conn. 563, 567, 362 A.2d 871, 875 (1975). If all four criteria are satisfied, the action is deemed to be against the state and, therefore, is barred.  The criteria are: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability. *Id at 875*.

In *Cimmino v. Macoccia*, 149 Conn. App. 350 (Conn. App. Ct. April 8, 2014)  a plaintiff brought suit alleging intentional infliction of emotional distress against Attorney Christina Ghio, a member of the Office of Child Advocate and Attorney Robert Teitelman, an Assistant Attorney General, in their individual capacities only.  The plaintiff in *Cimmino* was the former principal of an elementary school in Bridgeport.  In 2004, Cimmino was the subject of investigation by Bridgeport Police Department for an incident of alleged child abuse that occurred in 2002.  In 2005, the Department of Children and Families investigated the same incident of alleged child abuse.  Both investigations terminated in favor of Cimmino.  In July, 2009, Attorney Ghio, on behalf of the Office of the Child Advocate, and Attorney Teitelman, on behalf of the Office of the Attorney General, initiated an investigation into the school board's response to the allegations of child abuse made against the Plaintiff in connection with the 2002 allegations.  In the course of their investigation, Attorney Ghio and Attorney Teitelman questioned the superintendent of the Bridgeport public schools, John Ramos.  They showed Ramos pictures of the alleged child

abuse from the 2002 investigation of Cimmino.  Then they asked Ramos "what he intended to do about what was depicted in the photographs."  As a result of their pressuring Ramos to take action against Cimmino, the school board placed him on administrative leave and conducted an internal investigation.  Cimmino was terminated in 2010.  *Cimmino,* 149 Conn. App. at 356.

    In *Cimmino*, the Connecticut Appellate Court analyzed the four criteria.  The first criterion was met as the Defendants were both state officials.  With respect to the second criterion, the action against the Defendants stemmed from their interview of Ramos.  The interview occurred in connection with a joint investigation initiated by the Office of the Child Advocate and the Office of the Attorney General.   Plaintiff argued that when the Defendants asked Ramos what he intended to do about the depictions in the photographs, they implicitly urged him to take action against the Plaintiff.  Plaintiff argued that the Defendants acted beyond the scope of their official functions and the suit is not directed at a matter in which the defendants were acting on behalf of the state.  The Court held that the Plaintiff's argument failed.  "When the Defendants asked Ramos what he intended to do about the depictions in the photographs, they were acting in furtherance of a joint investigation authorized by statute and initiated by the state agencies that employed them.  Accordingly, because the action against the Defendants concerns a matter in which they represented the state, the second criterion is satisfied."  *Id.* at 359.

    Regarding the third criterion, the Plaintiff argued that he sued the Defendants in their individual capacities only.  He further argued that the allegations establish that the state is not the real party against whom relief is sought.  The Plaintiff purporting to sue the Defendants only in their individual capacities is not, in itself, determinative of whether the state is the real party in interest.  *Id*.  The Court stated that the "damages sought by the Plaintiff are premised entirely on

injuries alleged to have been caused by the Defendants in performing acts that were part of their official duties."  The Court concluded that the state is the real party in interest and the third criterion is satisfied.  *Id.*

The Court also found that the judgment though nominally against state officials will operate to control the activities of the state satisfying the fourth criteria.  "Any judgment against the Defendants would impact the manner in which state officials conduct investigations."  *Id.* at 360 citing *Hultman v. Blumenthal,* 67 Conn. App. 613, 621, 787 A.2d 666, cert denied, 259 Conn. 929, 723 A.2d 253 (2002).

Applying the *Spring* criteria to the instant matter, it is clear that the Plaintiff's claims are really against the state and not the Individual Defendants. First, the Individual Defendants are state officials. (Complaint ¶¶ 25, 32, 33). Second, the issue in this case – discipline of the Plaintiff for employee misconduct – concerns that Individual Defendants performing their duties on behalf of and representing the State. *Id*. Third, the State is clearly the real party. The Plaintiff here has sued the State, her employee for alleged employment discrimination. The damages sought by the Plaintiff are premised entirely on injuries alleged to have been caused by the Individual Defendants in performing acts that were part of their official duties.  There are no allegations that the named individual defendants were acting outside the scope of their official duties.  There is no question that the state is the real party in interest and the third criterion is satisfied.

Similarly, the fourth prong is also met. Holding these state employees liable for investigating and disciplining the Plaintiff for employee misconduct, would operate to control the activities of the state or subject it to liability.   It would adversely affect the state's ability to

police employee misconduct.  Thus, any judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability.

As such, the *Spring* test is met and the claims against the Individual Defendants should be found to really be asserted against the state and barred by sovereign immunity. Plaintiff fails to cite to any statute indicating that the legislature waived sovereign immunity with regard to her request for money damages and such these claims should be dismissed.

Indeed, Courts in this district have already dismissed similar IIED claims against State agencies due to sovereign immunity. *See, e.g.*, *Volpe v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. 3:13-CV-1796 CSH, 2015 WL 418149, at *8 (D. Conn. Jan. 30, 2015) (Eleventh Amendment required dismissal of claim of intentional infliction of emotional distress against DMHAS); *Owoeye*, 2016 WL 1089179, at *3–4. Connecticut common law provides that "the state cannot be sued without its consent." (Internal quotations marks omitted).  *Davila v. Messier*, No. 3:13-CV-81 SRU, 2014 WL 4638854, at *3 (D. Conn. Sept. 17, 2014). *Dragon*, 2014 WL 6633070, at *3 (IIED claim barred by Eleventh Amendment immunity).  Exceptions to the common law doctrine are narrowly construed under the jurisprudence of the *Connecticut Supreme Court, Chief Info. Officer v. Computers Plus Ctr.*, 310 Conn. 60, 79-80 (2013), and the meaning of a statute of derogation is 'given the effect which makes the least. . .  change in sovereign immunity.'"  (Internal quotation marks omitted).  *Id.*  "A plaintiff may only circumvent the doctrine by demonstrating that the state legislature statutorily waived the state's sovereign immunity, "either expressly or by force of a necessary implication."  *Id.*  "The state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed."  (Internal quotation marks omitted).  *Id.*

Moreover, the Connecticut Supreme Court has held that "a plaintiff seeking monetary damages against the state must first obtain authorization from the Claims Commissioner." *Morneau v. State*, 150 Conn. App. 237, 248 (Conn. App. Ct. 2014)(citing *Miller v. Egan*, 265 Conn. 301, 317 (2003)). The Complaint contains no mention whatsoever of the Claims Commissioner, let alone an explicit assertion in the Complaint that the Claims Commissioner authorized Plaintiff to sue a state entity for the torts of intentional infliction of emotional distress and common law claims. "[Where a] plaintiff has not received permission from the office of the claims commissioner to bring [an] action for money damages against the state…***the doctrine of sovereign immunity bars such an action***…."  (Emphasis added.) *Miller v. Egan*, 265 Conn. 301, 325 (2003); *see also Prigge v. Ragaglia,* 265 Conn. 338, 349 (2003) ("When a plaintiff brings a cause of action for money damages against the state, [the plaintiff] must proceed through the office of the claims commissioner. Otherwise, the action must be dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity").

Thus Counts Three and Four must be dismissed for lack of subject matter jurisdiction due to sovereign immunity barring such claims against Judicial (a state agency) and the Individual Defendants.

**B.  THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT GRANT IN HIS INDIVIDUAL CAPACITY AS ASSERTED IN COUNTS ONE, THREE AND FIVE, DUE LACK OF SERVICE OF PROCESS**

Defendant Grant has not been served in his individual capacity in the instant matter.  Due to insufficient service of process, the court lacks personal jurisdiction over Grant, requiring that the Plaintiff's claims brought against him in his individual capacity be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5).  *See* 5B C. Wright & A. Miller, *Federal Practice and*

*Procedure*:  Civil § 1353 (3d ed. 2006) ("[a] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.").

The federal rules provide that service upon an individual may be made by in-hand service, abode service, through an agent authorized by appointment or by law or *pursuant to the law of the state for service upon a defendant in state court*.  Fed. R. Civ. P. 4(e) (emphasis added).  Here, the Plaintiff has wholly failed to serve Defendant Grant, either in-hand or via abode service.

Connecticut General Statutes § 52-57(a) states: "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."  It is only in instances where the State or an "officer, servant, agent or employee of the state," acting in his or her official capacity, is sued that service through the Attorney General's Office is proper.  Connecticut General Statutes § 52-64.  Therefore, in order for the court to exercise personal jurisdiction over defendant Grant *in his individual capacity*, the Plaintiff had to have served him either in-hand or at his usual places of abode.  *See Kirkendall v. University of Connecticut Health Ctr*., 205 F.3d 1323, 2000 WL 232071 at * 1(2d Cir. 2000); *Edelman v. Page*, 123 Conn. App. 233, 242-44 (Conn. App. Ct. 2010).  The Plaintiff's failure to do so deprives the court of personal jurisdiction, requiring dismissal of the Plaintiff's claims against Defendant Grant in his individual capacity.

Once raised, the burden is upon the Plaintiff to prove that personal service was properly perfected and in a timely manner.  *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74, 77 (D. Conn. 2007)**.**  A motion to dismiss based on Fed. R. Civ. Proc Rule 12(b)(5) is properly used and granted when a plaintiff fails to serve a copy of the summons and complaint on the

defendants pursuant to Rule 4 of the Federal Rules, in a timely fashion.  *Id.* (District Courts are specifically authorized to dismiss lawsuits for failure to comply with federal service requirements); *Schaeffer v. Village of Ossoning, et al.*, 58 F.3d 48, 49 (2d Cir. 1995); *Eiden v. McCarthy, et al.,* 531 F. Supp. 2d 333, 343 (D. Conn. 2008) citing *Cole v. Aetna Life & Cas.*, 70 F. Supp.2d 106, 109 (D. Conn. 1999) ("12(b)5 motion must be granted if plaintiff fails to serve a copy of the summons and complaint on defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.").

Failure to serve the complaint upon a defendant deprives the court of personal jurisdiction.  Rule 4 of the Federal Rules of Civil Procedure deals with service of original process, which is the means by which the court secures jurisdiction over the defendant's person. Without jurisdiction over the person, the court cannot render a valid judgment against the person. Such a judgment, absent personal jurisdiction, violates due process.  *See*, e.g. *Shaffer v. Heitner*, 433 U.S. 186, (1977); *McDonald v. Mabee*, 243 U.S. 90 (1917); *Pennoyer v. Neff*, 95 U.S. 714 (1878).

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.  "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."  *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46, 90 L.Ed. 185 (1946).  Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum.  There also must be a basis for the defendant's amenability to service of summons.  Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capitol Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 103, 108 S. Ct. 404, 409, 98 L.Ed.2d 415 (1987).

The Court lacks personal jurisdiction over Grant in his individual capacity and therefore Counts One, Three and Five against Grant must be dismissed.

### C.  THE PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

In her Complaint, Plaintiff alleges that she has "exhausted her administrative remedies in this matter." (Compl. ¶45).  The Plaintiff did indeed file an employment discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO Complaint")[1] attached hereto and cited herein as "**Exhibit A**". The CHRO Complaint dated February 3, 2017 was dually filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.[2] The CHRO issued a release of jurisdiction ("ROJ") on April 19, 2018. EEOC issued Hampton a right-to-sue letter on May 18, 2018. (Copies of the ROJ and EEOC letter attached hereto collectively as **Exhibit B**). This case was not initiated until August 24, 2018, well after the ninety-day deadline following the right-to-sue letter.[3]  Accordingly, the Title VII claims asserted in the Complaint are untimely, and Defendants' motion to dismiss should be granted with respect to these claims.

In ruling on a 12(b)(6) motion, the Court may consider the complaint, any exhibits attached to the complaint, and any documents explicitly or implicitly incorporated into the

---

[1] Dual filing

[2] A complaint is deemed to include any written instrument attached to it as an exhibit, *see* Fed.R.Civ.P. 10(c); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985), materials incorporated in it by reference, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), and documents that, although not incorporated by reference, are "integral" to the complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *see Cortec Indus.*, 949 F.2d at 47. Here, Sira's complaint explicitly refers to and relies upon two of the documents at issue, the misbehavior report and the disposition sheet, *see* Complaint ¶¶ 35–42, 66, to show that Sira was deprived of liberty without adequate notice of the charges against him. These documents are thus incorporated by reference into the complaint.
*Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).
[3] 90 days following May 18, 2018 was August 16, 2018
https://www.timeanddate.com/date/dateadded.html?m1=05&d1=18&y1=2018&type=add&ay=&am=&aw=&ad=90&rec=

complaint by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.'" *Id.* at 153 quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

"'[M]atters judicially noticed by the District Court are not considered matters outside the pleadings.'" *Dechberry v. New York City Fire Dep't*, No. 14-CV-2130 KAM SMG, 2015 WL 4878460, at *1 (E.D.N.Y. Aug. 14, 2015) quoting *Gilbert v. N. Am. Airlines,* No. 12–CV–523, 2014 WL 1271057, at *1 (E.D.N.Y. Mar. 26, 2014).  "Matters subject to judicial notice --such as decisions [in] related proceedings --are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment.*" Jackson v. New York State*, 523 F. App'x 67, 68 (2d Cir. 2013). In an employment discrimination/retaliation case, it is proper to take judicial notice of the Plaintiff's underlying CHRO/EEOC complaint. *See, e.g., McBride v. Routh,* 51 F.Supp.2d 153, 155 (D.Conn.1999); *Colon v. The S. New England Tel. Co.*, No. 3:09-CV-802CSH, 2009 WL 4730480, at *1 (D. Conn. Nov. 30, 2009); *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 273 n.33 (D. Conn. 2010) (all noting court may take judicial notice of CHRO or EEOC charge on motion to dismiss).

It is well established that the federal court has jurisdiction under Title VII only over claims made in the Equal Employment Opportunities Commission ("EEOC") or Connecticut Commission on Human Rights and Opportunities ("CHRO") charge, or claims which are reasonably related thereto.  *Smith v. American President Lines, Ltd*., 571 F.2d 102, 107 (2d Cir. 1978).  A plaintiff commencing a Title VII action must exhaust her administrative remedies by first presenting her claims to the EEOC. *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994).

Exhaustion has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Failure to exhaust the administrative remedies defeats the purpose of Title VII's statutory notice provision, which is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Miller v. IT&T*, 755 F.2d 20, 26 (2d Cir. 1985).

Title VII requires a plaintiff to comply with its jurisdictional pre-requisites, which include filing a complaint with the EEOC and acting upon the EEOC's statutory notice of the right to sue.  *McDonnell Douglas v. Green*, 411 U.S. 792, 798 (1973); Title VII 42 U.S.C. § 2000e-5(f)(1). Suit must be brought within 90 days after the issuance of a right to sue letter. *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149 (1984).  Plaintiff alleges that she has exhausted her administrative remedies but does not attach a copy of the Right to Sue Letter. As there is no allegation that Plaintiff acted upon such Right to Sue Letter within ninety (90) days of receipt, as required by Title VII, this Court lacks jurisdiction to hear the Title VII claims and same must be dismissed.  *See Carpenter v. City of New York*, 09-CV-4524 ARR, 2011 WL 2118599 (E.D.N.Y. 2011) *aff'd,* 488 F. App'x 516 (2d Cir. 2012); *Francis v. Elmsford Sch. Dist.,* 442 F.3d 123, 124 (2d Cir. 2006) (affirming dismissal of Title VII claim as time-barred on the ground that plaintiff did not commence action within 90 days of receiving a right-to-sue letter); see also *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) ("the 90–day limitations period set forth in 42 U.S.C. § 2000e–5(f)(1) begins to run on the date that a right-to-sue letter is first received either by the claimant or by counsel, whichever is earlier."); see also *Williams v. State of Connecticut Dep't of Corr.*, No. 3:16-CV-01612 (VAB), 2017 WL 2838081, at *5 (D. Conn. June 30, 2017) ("This case was not initiated until September of 2016, well after the ninety-day deadline following the right-to-sue letter.... Accordingly, Mr.

Williams' Title VII claims are untimely, and Defendants' motion to dismiss is granted with respect to these claims.").

Plaintiff's claims brought pursuant to CFEPA and Title VII have thus not been exhausted because she failed to file suit within 90 days of receipt of the right to sue letter.

Further, a review of Hampton's CHRO complaint reveals that she only alleged that she was discriminated against because of her race and color. Nowhere in the CHRO complaint does Hampton mention a claim for gender discrimination. (*See* Exhibit A).

A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to those alleged in the EEOC charge. *Butts v. City of New York Dep't of Hous.,* 990 F.2d 1397, 1401 (2d Cir.1993). As the Second Circuit has observed, the exhaustion requirement is designed to give the EEOC sufficient opportunity to investigate claims, encourage their resolution, and take remedial measures. *Butts,* 990 F.2d at 1401–1402. A claim is "reasonably related" to conduct alleged in an EEOC charge if it meets one of three tests. *Butts,* 990 F.2d at 1402. First, a claim is "reasonably related" if the alleged conduct would fall within the scope of any EEOC investigation which would reasonably be expected to arise from the EEOC charge. *Id.* This "loose pleading" concept recognizes that EEOC charges are often filed by employees without the benefit of counsel. *Id.* Second, a claim is "reasonably related" if it alleges retaliation against the employee for the filing of an EEOC charge. *Id.* In this type of case, the exhaustion requirement is "relaxed" because of the close connection between the retaliatory act and the filing of the EEOC charge. *Id.* Third, a claim is "reasonably related" if it alleges further incidents of discrimination which are "carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03. In such cases, the purposes behind the exhaustion requirement are satisfied because the

EEOC has had the opportunity to investigate the means of discrimination as carried out in the prior incidents. *Id.* at 1403.

Here, Hampton did not give CHRO adequate notice to investigate discrimination on the basis of <u>gender</u>. See *Drummer v. DCI Contracting Corp.*, 772 F. Supp. 821, 827 (S.D.N.Y.1991) (for the EEOC reasonably to be expected to investigate a charge, it must somehow have been alerted to the claim). Indeed, she alleged that Judicial's decision to both discipline and terminate her was motivated by race or color discrimination. She did not allege that Judicial's disciplinary decisions were motivated by gender discrimination. Moreover, courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related. See, e.g., *Gronowicz v. Coll. of Staten Island*, 359 F.Supp.2d 243, 249 (N.D.N.Y.2005) ("plaintiff's administrative complaint alleging discrimination based on age could not reasonably be expected to have triggered an investigation into the allegations of national origin discrimination under Title VII."); *Culbertson v. Charosa Found. Corp.*, No. 03–CV–3742 (SJF) LB, 2004 WL 2370686, at *4 (E.D.N.Y. Oct.18, 2004) (finding that "plaintiff's administrative complaint alleging discrimination based on gender could not reasonably be expected to have triggered an investigation into the allegations of age, racial, and religious discrimination she now raises."); *Murray v. Brooklyn Public Library*, No. 96–2786, 1997 WL 1048899, at *3 (E.D.N.Y. June 13, 1997) (dismissing a gender discrimination charge where administrative complaint had only alleged discrimination on the basis of race and age); *Mitchell v. Fab Indus., Inc.*, No. 96–0095, 1996 WL 417522, at *3 (S.D.N.Y. July 25, 1996) ("claims of discrimination based upon race and national origin are not reasonably related to the original claims of religious and sexual discrimination under the loose pleading allowance described in Butts."). *Pleau v. Centrix, Inc.*,

501 F. Supp. 2d 321, 325–26 (D. Conn. 2007) ("Thus, he did not receive a "Release of Jurisdiction" from the CHRO to sue Centrix for gender discrimination. Because Mr. Pleau did not receive a "Release of Jurisdiction," as required by Conn. Gen.Stat. §§ 46a–100 and 46a–101, the court lacks subject matter jurisdiction over his CFEPA gender discrimination. Thus, to the extent Centrix moves to dismiss the Fourth Cause of Action, its motion is GRANTED in part.").

The Plaintiff has failed to exhaust her administrative remedies and as such Counts One and Two should be dismissed in their entirety.

Lastly, regarding the Title VII claim as asserted against the Individual Defendants same is not sustainable. It is well established that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (per curiam); *see, e.g., Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998). *Patterson v. Cty. of Oneida, N.Y.,* 375 F.3d 206, 221 (2d Cir. 2004) ("Accordingly, the district court properly dismissed Patterson's Title VII claims against the individual defendants.").

### D. PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN COUNT FOUR FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff purports to set forth a claim of intentional infliction of emotional distress against the Defendants but does not identify with particularity the conduct that forms the basis of her claim other than in conclusory language.  In any event, none of the allegations in the Complaint suffice to state a claim for intentional infliction of emotional distress.

"In order to prevail on a claim of intentional infliction of emotional distress [i]t must be shown:  (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."  *Petyan v. Ellis*, 200 Conn. 243, 253-54 (1986).  "Liability for intentional infliction of emotional distress has been found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind." *Armstrong v. Chrysler*, 1998 WL 323045 at * 5 (D. Conn. 1998).  "The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance."  *Id.*

The conduct alleged in the complaint simply does not meet the required threshold of outrageousness.  *See, e.g., Armstrong, supra* (holding allegations that defendants addressed plaintiff as "You-Who" and criticized, insulted, demeaned, and embarrassed her on a daily basis, took away her authority, frequently declared her incompetent, and demeaned her professional ability in the presence of her superiors and subordinates insufficient to state a claim for intentional infliction of emotional distress); *Valencia v. St. Francis  Hosp. & Med. Ctr.*, 1996 WL 218760 (Conn. Super. Ct. 1996) (holding that conduct was not extreme and outrageous where defendant "grabbed plaintiff's arm in front of patients and coworkers, pulled her in a back room and yelled at her"); *Johnson v. Chesebrough-Pond's USA Co*., 918 F. Supp. 543, 552-53 (D. Conn. 1996) (concluding that conduct was not extreme and outrageous where employee was suddenly terminated and physically escorted from the building like a criminal) aff'd, 104 F.3d 355 (2d Cir. 1996); *Barbuto v. William Backus Hosp.,* 1995 WL 235068 (Conn. Super. Ct.1995) (defendant's conduct in removing plaintiff from a work-shift schedule despite reassurances it would not do so and suspending her for two days not extreme and outrageous); *Thompson v. Service Merchandise, Inc*., 1998 WL 559735 (D. Conn. 1998)(dismissing intentional infliction of emotional where defendants allegedly targeted plaintiff, a black woman, for termination,

embarked on a course of conduct designed to get rid of her, prevented her from performing her job by failing to provide her with appropriate supervision, failed to provide her with sufficient staff and supplies, failed to comply with the procedures for probation set forth in the employee handbook, refused to grant her a requested demotion rather than firing her, despite the company's history of demoting white employees, and removed responsibilities from her in order to undermine her authority.); *Valentin v. Carten Controls, Inc* ., 1997 WL 766854 (D. Conn. 1997)(dismissing  intentional infliction claim based on allegations by plaintiff, who was pregnant and in precarious financial condition, that defendant criticized her work unjustly, spoke to her on numerous occasions in a loud, angry, accusatory voice, pounded his fists, displayed a demeaning attitude towards her, and frequently made allusions to her option to quit if she was unhappy, and that she was demoted without warning and that other employees knew about her demotion before she did.)

In this case, Plaintiff's allegations are patently insufficient to support a claim for intentional infliction of emotional distress.  This Court has consistently held that routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior.  See, e.g., *Javier v. Engelhard Corp*., No. 3:00CV2301(JCH), 2001 WL 1268619 at *4-5 (D. Conn. Oct. 1, 2001).

### E.  PLAINTIFF'S SECTION 1983 CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST GRANT, FULLER AND FITZGERALD AND MUST BE DISMISSED (COUNT FIVE)

In Count Five, the Plaintiff alleges equal protection and due process claims based on her race, color, ethnicity, gender or in retaliation against Individual Defendants Grant, Fuller and Fitzgerald in violation of the Equal Protection Clause as enforced through 42 U.S.C. § 1983. (Complaint, Count Five, ¶¶ 52-53).

"Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims. . . . " *Chick v. Cnty. of Suffolk*, 546

F. App'x 58, 59 (2d Cir. 2013) (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004.  However, "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional."  *Moore v. Mara*, No. 3:08CV1946 AWT, 2011 WL 3924295, at *6 (D. Conn. Sept. 7, 2011) (citing *Patterson*, 375 F.3d at 226).  Additionally, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983."  *Negron v. City of New York*, No. 10 CV 2757 RRM LB, 2011 WL 4737068, at *14 (E.D.N.Y. Sept. 14, 2011) (citing *Patterson*, 375 F.3d at 229).

The lone allegations against Defendants Fuller and Fitzgerald were to recommend that the Plaintiff be suspended and then terminated. (Complaint, ¶ 32).  The allegation against Grant is that he was the individual who made the final decision to suspend and then terminate the Plaintiff. (Complaint, ¶ 33).  However, the Plaintiff has admitted that she was returned to work by way of an arbitration decision.  (See Complaint, ¶ 37).

It is established law that if a termination has been reversed, then the adverse employment action is no longer applicable.  Because the termination was rescinded, the Plaintiff was returned to work, and the Plaintiff received back pay, she has not suffered an "adverse employment action"  for the termination, as required by the third prong of the *McDonnell Douglas* burden shifting analysis.

The Second Circuit has made clear that "'[a] plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment.'" *Raspardo v. Carlone*, 770 F.3d 97, 125-26 (2d Cir. 2014) quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000).  A change to the terms and conditions of employment is "materially adverse" in situations such as "termination of employment, a

demotion evidenced by a decrease in wage or salary, a less important title, a loss of important benefits, or significantly reduced responsibilities." *Id.* Adverse employment actions "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Rasprado*, 770 F.3d at 125-26 quoting *Galabya,* 202 F.3d at 640.

It is well established in this Circuit that in order to be an "adverse employment action," the "action" must be final rather than temporary. "[A]n adverse action is not merely the first or second step in the decisionmaking process; it is rather the ultimate result affecting lasting consequences upon the employee." (Internal citation omitted) *Negussey v. Syracuse Univ.*, No. 95-CV-1827, 1997 WL 141679, at *7-8 (N.D.N.Y. Mar. 24, 1997). "[A]n employment action may not be sufficiently adverse to support a cause of action if it is not a final employment decision, but rather an interlocutory or mediate decision. *Krinsky v. Abrams*, No. 01CV5052(SLT)(LB), 2007 WL 1541369, at *8 (E.D.N.Y. May 25, 2007) *aff'd*, 305 F. App'x 784 (2d Cir. 2009) citing *Brady v. Wal-Mart Stores, Inc.,* 455 F.Supp.2d 157, 170 (E.D.N.Y.2006) *aff'd*, 531 F.3d 127 (2d Cir. 2008). "'Mediate' actions, therefore, even if constituting an adverse employment action, may not lead to legally cognizable harm if by some subsequent action on the part of the employer, the employee is restored to his or her previous status." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 170 (E.D.N.Y. 2006) *aff'd*, 531 F.3d 127 (2d Cir. 2008).

Further, in cases in which a decision to terminate employment is rescinded and the employee is reinstated and receives full back pay, there is no adverse employment action. *See Rommage v. MTA Long Island Rail Rd.*, No. 08-CV-836 DLI ALC, 2010 WL 4038754, at *15 (E.D.N.Y. Sept. 30, 2010) *aff'd,* 452 F. App'x 70 (2d Cir. 2012) (holding that there is no adverse employment action where the employee was terminated and subsequently reinstated with full

back pay); *Krinsky v. Abrams*, No. 01CV5052(SLT)(LB), 2007 WL 1541369, at *8 (E.D.N.Y. May 25, 2007) *aff'd*, 305 F. App'x 784 (2d Cir. 2009) quoting *Brady v. Wal-Mart Stores*, *Inc*., 455 F. Supp. 2d 157, 170 (E.D.N.Y. 2006) *aff'd*, 531 F.3d 127 (2d Cir. 2008) ("Mediate actions, therefore, even if constituting an adverse employment action, may not lead to legally cognizable harm if by some subsequent action on the part of the employer, the employee is restored to his or her previous status."); *Washington v. Cnty. of Rockland*, 211 F. Supp. 2d 507, 514 (S.D.N.Y. 2002) *aff'd*, 373 F.3d 310 (2d Cir. 2004) (finding no adverse employment action where disciplinary charges and formal hearings that were ultimately dismissed and loss of pay was reinstated); *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 139-40 (E.D.N.Y. 2002) (Holding that there was "no legally cognizable adverse effect" on the plaintiff's employment because the plaintiff was reinstated with full back pay and "suffered no loss of wages, benefits, responsibilities, or anything else," that was caused by his temporary termination); *Wilson v. Consolidated Edison Co.*, 2000 WL 335733, at *8 n. 14 (S.D.N.Y. Mar.30, 2000) (holding reinstatement negates any adverse employment action);*Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 264 (E.D.N.Y. 1999) *aff'd*, 201 F.3d 432 (2d Cir. 1999) (finding that the plaintiff did not suffer an adverse employment action when she was terminated and her termination was subsequently retracted); *Almonte v. Coca-Cola Bottling Co. of N.Y.,* 959 F. Supp. 569, 572-73 (D. Conn. 1997) (holding that there is no adverse employment action where the employee was terminated and subsequently reinstated with full back pay); *Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 534 (N.D.N.Y.1995) *aff'd*, 108 F.3d 462 (2d Cir. 1997) (finding no adverse employment action where employer terminated employee but continued to give employee full salary and benefits because employee "did not lose any pay or other tangible benefits").

In this case, there is no dispute that the Plaintiff was reinstated to her position as a Juvenile Detention Transportation Officer through an arbitration award.  Therefore, the termination which was overturned by arbitration decision cannot be the adverse action for the purposes of this employment discrimination complaint. Further, the Plaintiff fails to allege any facts that support any personal and intentional discrimination by the Individual Defendants as is required. The Plaintiff's § 1983 discrimination claims against the Individual Defendants must, therefore, be dismissed for failure to state a claim pursuant to Federal Rule 12(b)(6).

### E.   THE 42 U.S.C. § 1981 CLAIM MUST BE DISMISSED SINCE 42 U.S.C. § 1983 IS THE EXCLUSIVE REMEDY

Plaintiff's Count Five claim is pursuant to both 42 U.S.C. §§ 1981 and 1983 against Defendants Grant, Fuller and Fitzgerald in their individual capacities.  The Plaintiff's claims of racial discrimination are not cognizable under 42 U.S.C. § 1981 since the United States Supreme Court has ruled that § 1981 does not afford an independent basis for a claim against a state defendant.  In *Jett v. Dallas Independent School District*, the U.S. Supreme Court held that 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 109 S. Ct. 2702, 2723, (1989)(emphasis added).  See also *Burbank v. Attorney General*, 240 F. Supp. 2d 167, 175 (D. Conn.) *aff'd* 2003 WL 22229428 (2d Cir. 2003).  In other words, there is no independent cause of action available.

This Court in *Burbank*, 240 F. Supp. at 174, affirmed that Congress did not abrogate *Jett* when it amended the Civil rights Act of 1991.  Although on its face the subsection appears to provide a cause of action against state actors, Courts use the fact that Congress "neither

expressed its intent to overrule *Jett*, nor explicitly created a remedy against state actors in addition to § 1983" to hold that they are unwilling to deviate from the Supreme Court's precedent.  *Id.*  (citing *Felton v. Polles*, 315 F.3d 470, (5th Cir. 2002).

There is simply no independent cause of action available to the Plaintiff under §1981 against the Individual Defendants (state employees). *Williams v. State of Connecticut Dep't of Corr.*, 2017 WL 2838081, at *6.

Accordingly, Plaintiff's § 1981 claim against Defendants Grant, Fuller and Fitzgerald must be dismissed.

## G.  THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

In the Complaint, the Plaintiff indicates that she is seeking punitive damages against the Defendants.[4]  (Complaint, p. 12) . The Civil Rights Act of 1991, 42 U.S.C. § 1981a, "was passed by Congress in 1991 to expand the remedies available to Title VII Plaintiff's adding compensatory and punitive damages to the equitable and injunctive relief available under Title VII alone."  *Ettinger v. State University of New York College of Optometry*, 1998 U.S. Dist. LEXIS 2289, 1998 WL 91089 at 7 (S.D.N.Y. March 2, 1998) (citing H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 65, 71 (1991), 1991 U.S.C.C.A.N. 549; see 42 U.S.C. § 1981a(a)(1)). Nevertheless, section 1981a(b)(1) specifically exempts government entities from punitive damages as follows:

(1)     Determination of punitive damages

A complaining party may recover punitive damages under this section against a respondent (**other than a government, government agency or political subdivision**) if the complaining party demonstrates that the respondent engaged in a discriminatory

---

[4] The Plaintiff's claim for damages does not differentiate the request for punitive damages, whether it is against Judicial Branch or against the Individual Defendants.

practice or discriminatory practices with malice or with reckless indifference to federally protected rights of an aggrieved individual.

(emphasis added).  42 U.S.C. § 1981a (b) (1).  See also *Erickson v. Hunter*, 932 F. Supp. 1380

(M.D. Fla. 1996).  Under this section, the Plaintiff cannot be awarded punitive damages against

the State of Connecticut and Judicial.  Accordingly, the Plaintiff's request for punitive damages

against Judicial and the Individual Defendants in their official capacities must be dismissed.


### H.  PLAINTIFF HAS NO RIGHT TO A JURY TRIAL ON HER CLAIMS FOR EQUITABLE RELIEF UNDER TITLE VII OR CFEPA

Here, this court should dismiss Plaintiff's claim for a trial by jury as to her request for back

pay, front pay and other equitable relief.

In the Civil Rights Act of 1991, congress created a right to recover compensatory and

punitive damages for certain violations of Title VII.  However, it did not create a right to a jury

trial on equitable claims.

> The 1991 Act enhanced Title VII's remedial scheme for disparate treatment claims. In addition to back pay and front pay, it authorized the recovery of compensatory and punitive damages in disparate treatment disputes, see 42 U.S.C. § 1981a(a)(1), and afforded a jury trial *where these additional remedies are sought*, see 42 U.S.C. § 1981a(c).

*Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 157 (2d Cir.2001) *abrogated on other*

*grounds  Wal–Mart Stores, Inc. v. Dukes,* _ U.S. _, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011).

"Because a lost wages award-whether in the form of back pay or front pay-is an equitable

remedy, a party is generally not entitled to a jury determination on the question." *Broadnax v.*

*City of New Haven*, 415 F.3d 265 (2d Cir.2005); *TSE v. UBS Financial Services, Inc*., 568

F.Supp.2d 274 (SDNY 2008).

Accordingly, Plaintiff does not have a right to have a jury decide her requests in this case for equitable relief under Title VII.  Accordingly, her request for a jury trial on such claims should be dismissed.

Similarly, in the event that this court does not dismiss Plaintiff's CFEPA claims in accord with the State's Eleventh Amendment and sovereign immunities, then Plaintiff's request for a jury trial must be dismissed.

The Connecticut Supreme Court has held that C.G.S. § 46a-100 is a waiver of the State's sovereign immunity to suit in superior court.  *Lyon v. Jones*, 291 Conn 384, 397 (2009).  However, waiver of sovereign immunity to suit in state court does not automatically infer a right to a jury trial.   "When the state, by statute, waives its immunity to suit . . . the right to a jury trial cannot be implied, but rather, must be affirmatively expressed."  *Skinner v. Angliker*, 211 Conn. 370, 381 (1989).   As the Supreme Court in *Skinner* also stated:  the "conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."  211 Conn. at 380-381.   For this reason the right to a jury trial against the state must be express.  "In the absence of such a specification, we have concluded that the legislature intended that the action should be tried without a jury."  *Canning v. Lensink*, 221 Conn. 346, 354 (1992).

Several Connecticut courts have noted that "Section 46a-100 does not contain a provision regarding trial by jury, therefore, no right to a trial by jury exists ***in an action against the state under § 46a-100***."  See, *Massey v. Connecticut Mental Health Center*, 1997 WL 78587  *1 (Conn. Super. Ct. February 4, 1997); See also *Orkney v. Connecticut Technical High School System*, 2010  WL 3171819 at *5 (Conn. Super. Ct. July 12, 2010); *Trantolo v. State*, 1999 WL 439356 *2-3 (Conn. Super. Ct. Jun. 8, 1999) (in sexual discrimination action against State of Connecticut, Dept. of Transportation, "[t]he court concludes that no right to a jury trial exists

pursuant to General Statutes 46a-100" and grants defendant's motion to strike claim from jury docket). Similarly, § 46a-60 does not contain a provision regarding trial by jury. Since neither § 46a-60 nor § 46a-100 affirmatively provides for a jury trial, no such statutory right exists.

In *Massey*, the court held that "[n]o principle of common law, prior to 1818, allowed actions against the state for wrongful discharge or related claims. Such actions, with or without a jury, simply did not exist ***against the state in 1818***. . . . Thus, even if a claim under § 46a-100 is similar to an action which existed at common law, that action could not have been brought against the state." (Citations omitted; internal quotation marks omitted.) *Id.* at *3 (emphasis added). Courts have held that § 46a-100 allows for a jury trial against a **private, non-state**, employer because sovereign immunity does not apply, see *Thayer v. Electro-Methods, Inc.*, 2005 WL 1971010, *3 (Conn. Super. Ct. Jun. 30, 2005) However, no court has held that § 46a-60 or § 46a-100 authorizes a jury trial against the state on a CFEPA claim.

The State has not expressly and affirmatively provided a right to a jury trial in § 46a-100 or § 46a-60. Thus, in the unlikely event that Plaintiff's CEFPA claims are not dismissed in accordance with the Eleventh Amendment, Plaintiff's claims under Connecticut General Statutes §§ 46a-60 and 46a-100 should be heard by the court.

Plaintiff does not have a right to have a jury decide her CFEPA claims and her request for a jury trial on her CFEPA claims must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Defendants hereby respectfully request that the court grant their Motion to Dismiss in its entirety and dismiss the Complaint filed herein.

DEFENDANTS,
STATE OF CONNECTICUT
JUDICIAL BRANCH, ET AL

WILLIAM TONG
ATTORNEY GENERAL


By:      _/s/ *Carletha S.P. Texidor*_____
         Carletha S.P. Texidor
         Assistant Attorney General
         Employment Rights Department
         55 Elm Street, P.O. Box 120
         Hartford, CT 06141-0120
         Tel:  (860) 808-5340
         Fax: (860) 808-5383
         E-mail: Carletha.Texidor@ct.gov
         Federal Bar # ct29604



## CERTIFICATION

I hereby certify that on January 16, 2019 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


                         */s/ Carletha S.P. Texidor*_____
                         Carletha S.P. Texidor (#ct29604)
                         Assistant Attorney General