# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SECRETT HAMPTON,
   *Plaintiff*,

v.

STATE OF CONNECTICUT JUDICIAL
BRANCH, STEPHEN GRANT, DEBORAH
FULLER, and JOHN FITZGERALD,
   *Defendants*.

No. 3:18-cv-1445 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

On August 24, 2018, Secrett Hampton ("Plaintiff") sued the State of Connecticut Judicial

Branch ("State Judicial Branch"), Stephen Grant, Debroah Fuller, and John Fitzgerald

(collectively, "Defendants"), alleging, *inter alia*, that Defendants' unpaid suspension and

termination of her employment violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et*

*seq.*, 42 U.S.C. §§ 1981 and 1983, and several state laws. Complaint, dated Aug. 24, 2018

("Compl."), ECF No. 1.

On January 16, 2019, Defendants moved to dismiss the Complaint. Defendants' Motion

to Dismiss, dated Jan. 16, 2019 ("Mot."), ECF No. 24; Defendants' Memorandum of Law in

Support of Mot., dated Jan. 16, 2019 ("Defs.' Mem."), ECF No. 24-1.

For the reasons explained below, Defendants' motion to dismiss is **GRANTED**, as the

Court finds that (1) Ms. Hampton has failed to plead sufficient facts to state a plausible claim

upon which relief can be granted under either Title VII or § 1983; and (2) Ms. Hampton has not

stated a cause of action under § 1981 that appears to be independent from her § 1983 claim.

Because her federal claims are dismissed, Ms. Hampton's state law claims are dismissed without

prejudice to being refiled in state court, as the Court declines to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

Ms. Hampton, an African-American woman, works as a Juvenile Detention Transportation Officer for the State of Connecticut Judicial Branch (hereafter, the "State Judicial Branch") in the Court Support Services Division at the Juvenile Residential Services Unit at 239 Whalley Avenue in New Haven, Connecticut. Compl. ¶¶ 13, 12. Ms. Hampton alleges that the State Judicial Branch employs more than one hundred employees. *Id.* ¶ 11.

On October 21, 2016, Ms. Hampton alleges that she and fellow officer Aquil Abdul-Salaam, an African-American man, "transported a known dangerous juvenile inmate to a medical appointment." *Id.* ¶¶ 15–16.

Ms. Hampton alleges that a "short time" before transporting him, this inmate "assaulted a seasoned male staff member at the facility at which the inmate was housed, choking and severely injuring the staff member[.]" *Id.* ¶ 17. On another occasion, Ms. Hampton alleges that this same inmate, while being transported, "became so enraged that he attempted to kick out the doors of the transport van," requiring Ms. Hampton to pull over and wait for additional staff to arrive to assist her. *Id.*

Because this inmate was so dangerous, Ms. Hampton alleges that on October 21, 2016—before she took him to his medical appointment, along with Mr. Abdul-Salaam—the inmate "was placed in the most restrictive mechanical restraints available and permissible" under

---

[1] Defendants agree that the Court must accept all well-pleaded factual allegations in the Complaint as true when evaluating Defendants' arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6). All facts are, accordingly, drawn from the Complaint.

Defendants' policies, "including leg shackles, handcuffs and a belly chain secured around his waist attached to the handcuffs." *Id.* ¶ 18. Ms. Hampton and Mr. Abdul-Salaam then allegedly took him to his medical appointment, which allegedly took place in a "busy public physician's office." *Id.* ¶¶ 15, 19.

After arriving at the office, the inmate allegedly "defeated his restraints, leaving the now unsecured belly chain attached to his handcuffs in front of his body, for ready use as a deadly weapon." *Id.* ¶ 20. The inmate allegedly refused to comply with Ms. Hampton's directives, "acted in a threatening manner," and then "fled the medical office." *Id.* ¶ 21.

While Ms. Hampton alleges that she and Mr. Abdul-Salaam followed the inmate at a safe distance as required by State Judicial Branch policy, they were allegedly "unable to safely restrain him and return him to custody." *Id.* ¶ 22. Ms. Hampton and Mr. Abdul-Salaam allegedly then returned to their work location and completed incident reports detailing the escape. *Id.* ¶ 24.

Later that day, Mr. Hampton alleges that John Fitzgerald, the Superintendent of the State Judicial Branch, and Jimmy Gomez, a Shift Supervisor of the State Judicial Branch, approached her at the end of her shift. *Id.* ¶ 25. She alleges they told her to hand in her badge, and that Defendants placed her on unpaid administrative leave "prior to any investigation whatsoever." *Id.* ¶¶ 26–27. She also alleges, upon information and belief, that Defendants reported her to the State of Connecticut Department of Children and Families ("DCF") for physical and emotional neglect of the inmate. *Id.* ¶ 28.

Ms. Hampton alleges that Defendants "refused and failed to conduct a timely investigation," and that she "remained on unpaid administrative leave for a protracted time." *Id.* ¶ 30.

On February 3, 2017, Defendants allegedly terminated Ms. Hampton's employment. *Id.* ¶ 31.

Ms. Hampton alleges that both of these decisions were "recommended" by Deborah Fuller, Director of Family/Juvenile Services for the State Judicial Branch, and Mr. Fitzgerald, and that Stephen Grant, Executive Director of the Court Support Services Division, made the final decisions to suspend and then terminate her. *Id.* ¶¶ 32–33. Ms. Hampton alleges that all three of these individual defendants are white. *Id.*

On April 2, 2018, Ms. Hampton alleges that DCF's findings of neglect were "reversed on appeal to that agency and set aside." *Id.* ¶ 34. Ms. Hampton alleges that Defendants had relied, in part, on those findings when disciplining her. *Id.*

On May 23, 2018, Ms. Hampton alleges that her termination and a "substantial portion" of her unpaid suspension were reversed by a union arbitration award. *Id.* ¶ 37.

## B. Procedural History

On August 24, 2018, Ms. Hampton sued Defendants. *See* Compl. Ms. Hampton alleged three causes of action that appear to have been brought against the State Judicial Branch only, arising from her unpaid suspension and termination: (1) "discrimination based upon race, color, ethnicity, gender or in retaliation for her protected complaints about unlawful conduct," in violation of Title VII, Compl. ¶¶ 44–47 (Count One); (2) violation of Ms. Hampton's "common law rights" under Connecticut law, due to the State Judicial Branch's alleged discrimination in violation of the Connecticut Fair Employment Practices Act, CONN. GEN. STAT. §§ 45a-60 *et seq.* ("CFEPA"), *id.* at 9, ¶¶ 47–48 (Count Two); and (3) violations of Ms. Hampton's "common law rights" under Connecticut law, due to the State Judicial Branch's alleged failure to adequately train, screen, hire, or supervise employees, *id.* at 9–10, ¶¶ 47–48 (Count Three).

Ms. Hampton also alleged two causes of action against Mr. Grant, Ms. Fuller, and Mr. Fitzgerald: (1) intentional infliction of emotional distress, *id.* at 10–11, ¶¶ 47–51 (Count Four); and (2) intentional, reckless, and discriminatory conduct, and disparate treatment, in violation of "equal protection, due process, and 42 U.S.C. [§§] 1981 and 1983." *See id.* at 11–12, ¶¶ 47–53 (Count Five). With respect to Count Five, Ms. Hampton is suing Mr. Grant, Ms. Fuller, and Mr. Fitzgerald in their individual capacities only. *Id.* at 11, ¶¶ 47–49.

For all five counts, Ms. Hampton claims Defendants' actions have resulted in: "loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self-esteem, peace of mind, emotional and physical well-being; loss of reputation and standing in his employment, in the eyes of prospective employers and in the public at large; and has suffered severe emotional and mental distress." *See id.* at 8, ¶ 47; 9, ¶ 48; 10, ¶ 48; 10–11, ¶ 51; 12, ¶ 53.

On November 2, 2018, counsel appeared for the State Judicial Branch and for the individual Defendants. Notice of Appearance, dated Nov. 2, 2018, ECF No. 9. Counsel claimed, however, to be representing Mr. Grant, Ms. Fuller, and Mr. Fitzgerald in their official capacities only. *Id.*

That same day, Defendants moved for: (1) an order requiring Ms. Hampton to post a bond as security for costs in the amount of $500, Motion for Security for Costs, dated Nov. 2, 2018, ECF No. 10; and (2) an extension of time until December 3, 2018 to respond to the Complaint, Motion for Extension of Time, dated Nov. 2, 2018, ECF No. 11.

On November 3, 2018, the Court granted Defendants' motion to extend time and extended Defendants' time to respond to the Complaint to December 3, 2018. Order, dated Nov. 3, 2018, ECF No. 12.

On November 5, 2018, the Clerk of the Court granted Defendants' motion for security for costs. Order, dated Nov. 5, 2018, ECF No. 13.

On November 27, 2018, counsel appeared for Mr. Fitzgerald and Ms. Fuller, claiming to now represent them in their individual capacities as well.

That same day, Defendants again moved to extend their time to respond to the Complaint. Motion for Extension of Time, dated Nov. 27, 2018, ECF No. 15.

On November 28, 2018, the Court granted Defendants' motion and extended Defendants' time to respond to the Complaint to January 17, 2019. Order, dated Nov. 28, 2018, ECF No. 16.

On December 14, 2018, Defendants moved for default and summary dismissal of this action, with prejudice, for failure to post the bond for costs. Motion for Default for Failure to Post Security for Costs, dated Dec. 14, 2018, ECF No. 17.

On December 17, 2018, Ms. Hampton posted security for costs in the amount of $500. *See* ECF No. 19.

On December 20, 2018, Defendants withdrew the motion for default for failure to post bond. Motion to Withdraw Motion for Default, dated Dec. 20, 2018, ECF No. 20.

On December 21, 2018, the Court found both of Defendants' motions regarding the bond moot. *See* Orders, dated Dec. 21, 2018, ECF Nos. 21–22.

On January 16, 2019, Defendants moved to dismiss the Complaint under Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, asserting eight grounds for dismissal. *See* Mot.

On January 17, 2019, Defendants moved to stay discovery pending resolution of the motion to dismiss. Motion to Stay Discovery, dated Jan. 17, 2019, ECF No. 25.

On January 30, 2019, the Court granted the motion and stayed discovery until May 1, 2019. Order, dated Jan. 30, 2019, ECF No. 26.

On February 7, 2019, Ms. Hampton moved, with Defendants' consent, for an extension of time to respond to the motion to dismiss. Consent Motion for Extension of Time, dated Feb. 7, 2019, ECF No. 27.

On February 8, 2019, the Court granted Ms. Hampton's motion and extended her time to respond to the motion to dismiss to March 11, 2019. Order, dated Feb. 8, 2019, ECF No. 28.

On March 13, 2019, Ms. Hampton moved, with Defendants' consent, for a second extension of time to respond to the motion to dismiss. Consent Motion for Extension of Time, dated Mar. 13, 2019, ECF No. 29.

On March 14, 2019, the Court granted Ms. Hampton's motion and extended her time to respond to the motion to dismiss to April 15, 2019. Order, dated Mar. 14, 2019, ECF No. 30.

Ms. Hampton did not file a timely response or further motion for an extension of time.[2]

On May 2, 2019, Defendants moved to continue the stay of all discovery pending resolution of the motion to dismiss. Renewed Motion to Stay, dated May 2, 2019, ECF No. 32.

---

[2] On the date of the hearing, July 22, 2019, Ms. Hampton belatedly filed an objection to Defendants' motion to dismiss. Objection to Mot., dated Jul. 22, 2019, ECF No. 38. While the Court has reviewed this untimely submission, it will not rely on it because: (1) relying on it would either deprive Defendants of an opportunity to reply or require a further delay of these proceedings, which have already been delayed several months as a result of extensions of time already granted to Ms. Hampton; and (2) Ms. Hampton has not moved for an extension of time *nunc pro tunc*, nor otherwise made any showing of "excusable neglect" that would justify the Court granting such an extension under Federal Rule of Civil Procedure 6(b)(1)(B). *See* D. Conn. L. Civ. R. 7(a)(2) ("Unless otherwise ordered by the Court, all opposition memoranda shall be filed within twenty-one (21) days of the filing of the motion, and shall indicate in the lower margin of the first page of such memorandum whether oral argument is requested."); FED. R. CIV. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect."); *see also LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) ("'[E]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of movant. Rather, it may encompass delays 'caused by inadvertence, mistake, or carelessness,' at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit.") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993) (discussing pre-restyling version of FED. R. CIV. P. 6(b)); *accord Luo v. Baldwin Union Free Sch. Dist.*, 677 F. App'x 719, 720 (2d Cir. 2017). Ms. Hampton, however, has not been prejudiced by this untimely filing, as the Court permitted her counsel to argue without restriction on her behalf at the July 22, 2019 hearing.

On May 3, 2019, the Court granted the motion and extended the stay of discovery until August 2, 2019. Order, dated May 3, 2019, ECF No. 33.

On July 22, 2019, the Court held oral argument on the motion to dismiss and reserved decision. Minute Entry, dated Jul. 22, 2019, ECF No. 39.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B.  Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The

plaintiff therefore must make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011), *as amended* (Sept. 23, 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

The court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### C. Rule 12(b)(5)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) due to insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007); *see* FED R. CIV. P. 12(b)(5).

"Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

### D. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed under Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6).

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'") (citation omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 U.S. 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) ("the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citing 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1350, 548 (1969)).

But in a case involving both federal claims brought under the court's federal question jurisdiction, 28 U.S.C. § 1331, and state claims which form part of the "same case or controversy" as the federal claims under the court's supplemental jurisdiction, 28 U.S.C. § 1367, courts may first determine whether any of the federal claims would survive dismissal such that it may properly exercise supplemental jurisdiction—before addressing motions to dismiss the state-law claims. *See Montefiore Medical Center v. Teamsters Local 272,* 642 F.3d 321, 332 (2d Cir.

2011) ("In order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction."); *see also Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 ("[The District Court] cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.").

The Court therefore will first consider Defendants' challenges to the federal law claims in this action before turning to other grounds for dismissal and then, if necessary, will assess whether its discretion to dismiss state-law claims is triggered under 28 U.S.C. § 1367(c).

### A. Timeliness of Title VII Claim

 Under Title VII, "a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (citing 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006)). The complainant has 180 days from the adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Then, "the complainant must await dismissal of the administrative charge (or a failure to act)[.]" *McPherson*, 457 F.3d at 214.

"A private Title VII plaintiff must also first receive a 'right-to-sue' letter from the EEOC." *Id.* at 213 (citing 42 U.S.C. § 2000e-5(f)(1); *Holowecki*, 440 F.3d at 563). Once the complainant receives a "right-to-sue" letter from the EEOC, he or she has ninety days to file a civil action in the appropriate federal court. 42 U.S.C. § 2000e-5(f)(1); *see also McPherson*, 457 F.3d at 214 ("Such notification is called a 'right-to-sue' letter because the notification is a prerequisite to suit (even though the notification does not indicate that *all* of the statutory prerequisites for suit have been met, and therefore does not bespeak a 'right').").

Defendants argue that Ms. Hampton's Title VII claim of discrimination is untimely because she filed her claim beyond the 90-day filing window mandated by Title VII.

The Court agrees.

Ms. Hampton has not properly pleaded facts indicating that she timely filed this action after receiving the right-to-sue letter, as she has only pleaded that she has "exhausted her administrative remedies in this matter"—a conclusory statement of law, not fact. *See* Compl. at 8, ¶ 45 ("The plaintiff has exhausted her administrative remedies in this matter."); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *Twombly*, 550 U.S. at 555 ("on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Defendants have submitted a document they allege is the right-to-sue letter that Ms. Hampton received from the EEOC, and which they argue conclusively indicates that Ms. Hampton filed this action eight days after the deadline to do so. *See* EEOC Dismissal and Notice of Rights, dated May 18, 2019, annexed as Ex. B to Defs.' Mem. That document, however, has not been incorporated by reference explicitly or implicitly, through authentication by affidavit or otherwise.

In the alternative, Defendants argue that the Court may consider the document under Rule 12(b)(1) because failure to comply with the 90-day filing requirement is jurisdictional. *See* Defs.' Mem. at 21 ("As there is no allegation that Plaintiff acted upon such Right to Sue Letter within ninety (90) days of receipt, as required by Title VII, this Court lacks jurisdiction to hear the Title VII claims and same must be dismissed.") (collecting cases).

The Supreme Court recently rejected this argument, holding in a unanimous opinion that Title VII's charge-filing requirement is not jurisdictional. *See Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast .

. . . Separate provisions of Title VII, § 2000e-5(e)(1) and (f)(1), contain the Act's charge-filing requirement. Those provisions 'do not speak to a court's authority,' or 'refer in any way to the jurisdiction of the district courts.' . . . . Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts.") (citations omitted). Accordingly, Ms. Hampton's alleged failure to timely file this civil action would not deprive this Court of jurisdiction over her Title VII claim.

Ms. Hampton's failure to plead facts demonstrating that she has complied with the charge-filing requirement, however, requires this Court to dismiss her Title VII claim, as she has not stated a plausible claim upon which relief may be granted. This conclusion flows naturally from the fact that the charge-filing requirement is a claim-processing rule, one that is "mandatory in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend Cty.*, 139 S. Ct. at 1849 (citations, internal quotation marks, and alterations omitted).

Defendants have properly raised this argument as part of their 12(b)(6) motion. Accordingly, the Court will dismiss Ms. Hampton's Title VII claim at this time, but will permit her leave to amend the Complaint to state facts indicating whether or how she complied with the charge-filing requirement.[3]

### B.  Section 1981 Claim

Defendants argue that Ms. Hampton's claim under 42 U.S.C. § 1981 against Mr. Grant, Ms. Fuller, and Mr. Fitzgerald, in their individual capacities, must be dismissed for failure to state a claim "since the United States Supreme Court has ruled that § 1981 does not afford an

---

[3] Because the Court dismisses Ms. Hampton's entire Title VII claim on this basis, the Court does not reach Defendants' separate argument that Ms. Hampton's failure to include claims of gender-based discrimination in her complaint to the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") requires dismissal of her claim of gender-based discrimination. *See* Defs.' Mem. at 22–24.

independent basis for a claim against a state defendant." Defs.' Mem. at 30 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

The Court agrees, but for a different reason.

In *Jett*, the Supreme Court dismissed the plaintiff's § 1981 claim against the municipality, but remanded plaintiff's claim against a school principal in his individual capacity on other grounds. *See Jett*, 491 U.S. at 736–38. This indicates that the rule announced in *Jett* does not apply to § 1981 claims brought against state actors such as Mr. Grant, Ms. Fuller, and Mr. Fitzgerald in their individual capacities. Indeed, the Second Circuit has held that "individuals may be held liable under § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000); *see also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action.") (citation and internal quotation marks omitted).

Accordingly, the Court declines to dismiss Ms. Hampton's § 1981 claim on this basis.

It does not appear, however, that Ms. Hampton's § 1981 claim is actually asserting a cause of action that is separate from her claim under 42 U.S.C. § 1983 against Mr. Grant, Ms. Fuller, and Mr. Fitzgerald in their individual capacities. *See* Compl. at 12, ¶ 52 ("The conduct of the defendants Grant, Fuller, and Fitzgerald constitute discrimination and disparate treatment in violation of equal protection, due process, and 42 U.S.C. Sections 1981 and 1983.").

The Court therefore will dismiss Ms. Hampton's § 1981 claim, and address all alleged violations of § 1981 through Ms. Hampton's § 1983 claim. *See Williams v. State of Conn. Dep't of Corr.*, No. 3:16-cv-1612 (VAB), 2017 WL 2838081, at *6 (D. Conn. Jun. 30, 2017) ("To the extent that Mr. Williams does seek to assert an independent claim under Section 1981,

Defendants' motion to dismiss is granted with respect to this claim. All alleged violations of Section 1981 will be addressed exclusively through Mr. Williams' Section 1983 claim.").

### C. Section 1983 Claim

#### 1. Service & Personal Jurisdiction over Mr. Grant

As an initial matter, the Court notes that Defendants have moved, under Rules 12(b)(2) and 12(b)(5), to dismiss all claims against Mr. Grant in his individual capacity due to insufficient service of process. *See* Defs.' Mem. at 16–19. Defendants argue that while Mr. Grant has been served in his official capacity, he has not been served in his individual capacity—thus depriving the court of personal jurisdiction over him. *Id.* at 16.

The Court disagrees.

Defendants argue that they were all served only through service on the state attorney general, under Federal Rule of Civil Procedure 4(e) and Connecticut General Statute § 52-64. *See* Defs.' Mem. at 17; FED. R. CIV. P. 4(e)(1) (permitting service on an individual "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); CONN. GEN. STAT. § 52-64 ("Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and

complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford.").

Defendants read CONN. GEN. STAT. § 52-64 to provide that when service on a state officer is made through the state attorney general, it is only made with respect to claims brought against that officer in an official capacity. *See* Defs.' Mem. at 17. Defendants contend that "for the court to exercise personal jurisdiction over defendant Grant *in his individual capacity*, the Plaintiff had to have served him either in-hand or at his usual places of abode." *Id.* (emphasis in original) (citing *Kirkendall v. Univ. of Conn. Health Ctr.*, 205 F.3d 1323 (table), 2000 WL 232071 at *1 (2d Cir. 2000) (unpublished opinion); *Edelman v. Page*, 123 Conn. App. 233, 242–44 (2010)).

Defendants' reading of the statute draws considerable support from Second Circuit caselaw. *See Bogle-Assegai v. Conn.*, 470 F.3d 498, 507 (2d Cir. 2006) ("This provision on its face does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity.").[4]

Nevertheless, counsel has not filed an appearance for Mr. Grant in his individual capacity, nor has he personally appeared. The appearing Defendants may not assert an insufficient service of process or personal jurisdiction defense on his behalf. Mr. Grant must

---

[4] The Court notes, however, that the statute has been amended since *Bogle-Assegai* was decided, in a manner that altered some of the language in the statute directly relied on by the Second Circuit. *Compare Bogle-Assegai*, 470 F.3d at 507 ("Connecticut law, however, provides that delivery to the Attorney General constitutes service on an individual state officer or employee 'as' an officer or employee: 'Service of civil process in any civil action or proceeding maintainable against . . . the state or ... any officer*, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as such, may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford.'") (quoting version of § 52-64 effective from 2005 to Sept. 30, 2012), *with* CONN. GEN. STAT. § 52-64 (eff. Oct. 1, 2012) ("Service of civil process in any civil action or proceeding maintainable against . . . the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by . . . .").

assert this defense on his own, in his individual capacity—as the individual defendants in *Bogle-Assegai* did.[5]

## 2. Failure to State a Claim

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). When employment discrimination claims are asserted under § 1983, based on alleged equal protection or due process violations, they are generally analyzed under the same initial standard as Title VII claims to determine whether they state a *prima facie* case of employment discrimination: the *McDonnell-Douglas* burden shifting framework. *See Patterson*, 375 F.3d at 225 ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause . . . .") (collecting cases); *Sorlucco v. N.Y.C. Police Dep't*, 888 F.2d 4, 7 (2d Cir. 1989) ("The Supreme Court has outlined a three-step analysis of factual issues in Title VII claims. By analogy, the same analysis applies to claims under section 1983.") (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981) and *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), and collecting

---

[5] To be clear, these defenses have not necessarily been waived if Mr. Grant was not, in fact, served personally. The Court simply finds that a party may not assert such an affirmative defense on another party's behalf, as these defenses are personal to him. *See, e.g.*, *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) ("Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service of process. If *he* wishes to raise [either] of these defenses *he* must do so at the time *he makes his* first significant defensive move.'") (emphasis added). To assert these defenses, Mr. Grant may appear and directly challenge service of process and the Court's personal jurisdiction over him. *See Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer.") (collecting cases). "It is equally clear, however, that a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.'" *Transaero*, 162 F.3d at 729 (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)).

cases); *St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 237 ("Employment discrimination claims under § 1983 are evaluated under the same analytical framework as those brought under Title VII.") (citations omitted).

Accordingly, to state a claim for employment discrimination under § 1983, a plaintiff must allege (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *See Liebowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). However, "a plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional." *Patterson*, 375 F.3d at 226 (collecting cases).

The burden of establishing a *prima facie* case is minimal. *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) ("The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal.") (quoting *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998)).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999)). Such a "change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.*(quoting *Crady v. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Crady*, 993 F.2d at 136).

Defendants argue that Ms. Hampton fails to state a claim because the termination she claims as her adverse employment action was reversed. *See* Defs.' Mem. at 27 ("Plaintiff has admitted that she was returned to work by way of an arbitration decision. It is established law that if a termination has been reversed, then the adverse employment action is no longer applicable. Because the termination was rescinded, the Plaintiff was returned to work, and the Plaintiff received back pay, she has not suffered an 'adverse employment action' for the termination, as required by the third prong of the *McDonnell Douglas* burden shifting analysis."); *id.* at 28 ("[I]n cases in which a decision to terminate employment is rescinded and the employee is reinstated and receives full back pay, there is no adverse employment action.") (collecting cases).

The Court agrees that Ms. Hampton's § 1983 claim should be dismissed, but for a different reason.

Some courts have found that arbitration awards which reverse a termination and award back pay may render the termination an "interlocutory" or "mediate" action, and thus no longer a cognizable adverse employment action. *See McKinney v. Dep't of Trans.*, 168 F. Supp. 3d 416, 423 (D. Conn. 2016) (collecting cases, and finding that plaintiff's "reinstatement with pay and benefits rendered her suspension without pay following the arbitration award a mediate action such that she cannot now demonstrate that she suffered an adverse employment action.").

But Plaintiff's Complaint suggests that the arbitration may not have resulted in full relief. Ms. Hampton has pleaded not one but two adverse employment actions: (1) her unpaid suspension, which lasted more than three months; and (2) her termination. According to the

Complaint, "the termination, and substantial portion of the plaintiff's unpaid suspension" were reversed by the arbitration. Compl. at 7, ¶ 37. This suggests that some period of the unpaid suspension was not "reversed." It also does not indicate that Ms. Hampton received a full backpay award, as Defendants have argued. Accordingly, the Court will not dismiss Ms. Hampton's § 1983 claim on this basis.

Defendants argue, in the alternative, that Ms. Hampton "fails to allege any facts that support any personal and intentional discrimination by the Individual Defendants as is required." Defs.' Mem. at 30.

The Court agrees.

The circumstances Ms. Hampton has pleaded as giving rise to an inference of discrimination are that, sometime before the October 21, 2016 incident, a similarly-situated white employee, Carissa Laudano, "was involved in a substantially similar incident" but was "neither placed on unpaid administrative leave pending an investigation outcome, nor terminated." Compl. at 7, ¶¶ 39–42.

Those facts, as-pleaded, could very well be sufficient to demonstrate that the adverse actions Ms. Hampton allegedly suffered occurred under circumstances that give rise to an inference of discrimination in the Title VII context, insofar as they state a claim of disparate treatment claim.

But, as noted above, the circumstances pleaded as giving rise to an inference of discrimination under § 1983 must be such that they give rise to an inference of intentional discrimination. *Patterson*, 375 F.3d at 226. Moreover, because the § 1983 claim is brought against Mr. Grant, Ms. Fuller, and Mr. Fitzgerald in their individual capacities, those circumstances must also indicate that those three defendants were personally involved. *See id.* at

229 ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983. Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring.") (citations omitted).

Here, while Ms. Hampton appears to have adequately alleged Mr. Grant, Ms. Fuller, and Mr. Fitzgerald were personally involved in her suspension and termination, she has not pleaded any facts demonstrating that they were involved in the alleged discipline of Ms. Laudano. She therefore has not pleaded any facts suggesting that the circumstances in which she was suspended and then terminated give rise to an inference that Mr. Grant, Ms. Fuller, and Mr. Fitzgerald intentionally discriminated against her. She therefore has not stated a *prima facie* case of discrimination under § 1983 against these individuals.

Accordingly, the Court dismisses Ms. Hampton's § 1983 claim for failure to state a plausible claim upon which relief may be granted.

### D. State Law Claims

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N.Y.–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Catzin v. Thank You & Good Luck Corp.,* 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . 'a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'") (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that "in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari,* 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988); *Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction "in the usual case" clearly does not mean that the balance of the factors always points that way." *Catzin,* 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

Because the Court has dismissed all federal claims in this action, the Court must conduct the discretionary inquiry required under 28 U.S.C. § 1367(c) to determine whether it is appropriate to maintain jurisdiction over the remaining state-law claims.

Having weighed the traditional factors, this case appears to be the "usual case." In particular, the Court notes that because all of the remaining state-law claims are brought against the State of Connecticut and the individual defendants in their official capacity, the state's sovereign immunity under the Eleventh Amendment may well require that those claims be adjudicated in state court. Moreover, the principle of comity also suggests that Connecticut state courts should have the opportunity to evaluate Ms. Hampton's remaining claims, under state-law pleading standards, to determine whether they, in fact, could state a plausible cause of action under Connecticut law. The Court further finds that, given the early stage of this case, there is no added convenience in retaining jurisdiction here.

Accordingly, the Court declines to exercise supplemental jurisdiction over Ms. Hampton's remaining claims under Connecticut law.

### E. Leave to Amend

While Ms. Hampton has not yet moved for leave to amend in the event of dismissal, "it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962); *Koehler v. Bank of Bermuda (N.Y.) Ltd.*, 209 F.3d 130, 138 (2d Cir. 2000)).

The Court finds that Ms. Hampton may be able to plead sufficient facts to address the factual deficiencies identified above, and that Defendants have not indicated that there is any good reason to deny leave to amend.

Accordingly, the Court will grant Ms. Hampton leave to amend her complaint before issuing a final judgment dismissing her claims.

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion is **GRANTED**, as the Court finds that (1) Ms. Hampton has failed to plead sufficient facts to state a plausible claim upon which relief can be granted under either Title VII or § 1983; and (2) Ms. Hampton has not stated a cause of action under § 1981 that appears to be independent from her § 1983 claim.

Because her federal claims are dismissed, Ms. Hampton's state law claims are dismissed without prejudice to being refiled in state court, as the Court declines to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c).

If Ms. Hampton wishes to file an Amended Complaint to address the factual deficiencies identified in this Ruling and Order, she must do so by **August 30, 2019**.

Failure to timely file an Amended Complaint will result in the dismissal of her federal claims, with prejudice, and the dismissal of her state law claims, without prejudice to refiling in state court.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of July, 2019.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

25