## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SECRETT HAMPTON,
*Plaintiff*,

v.                                                    No. 3:18-cv-1445 (VAB)

JUDICIAL BRANCH, *et al.*,
*Defendants.*

### RULING AND ORDER ON MOTION TO DISMISS

Secrett Hampton ("Plaintiff") has sued the State of Connecticut, Judicial Branch, Stephen Grant, Deborah Fuller, and John Fitzgerald (collectively, "Defendants") for violating her constitutional rights as secured by the U.S. Constitution and the Connecticut Constitution. Am. Compl. ECF No. 41 at 1, ¶ 1 (Aug. 28, 2019). She alleges disparate treatment, a hostile work environment, harassment and retaliation because of race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *Id.* at 1–2, ¶¶ 1–3, 5. She also alleges three state law claims: violation of the Connecticut Fair Employment Practices Act, failure to train and supervise, and intentional infliction of emotional distress. *Id.* at 2, ¶ 6.

Defendants have moved to dismiss. Mot. to Dismiss, ECF No. 43 (Sept. 11, 2019) ("Defs.' Mot.").

For the following reasons, the motion to dismiss is **GRANTED in part, DENIED in part.** As to her federal claims, the only remaining claim will be Ms. Hampton's Title VII claim against the Judicial Branch. The three state law claims—Connecticut Fair Employment Practices Act, failure to train, intentional infliction of emotional distress—will proceed to at least the summary judgment stage.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

Ms. Hampton, an African American woman living in New Haven, Connecticut, Am. Compl. at 3 ¶¶ 8–9; works as a Juvenile Detention Transportation Officer (JTO) in the State of Connecticut Judicial Branch's Court Support Services Division in the Juvenile Residential Services Unit, *id.* at 3, ¶ 12. She alleges having "been subjected to discriminatory and hostile treatment at the workplace, and harsher discipline, up to and including termination, than her non African American counterparts." *Id.* at 3, ¶ 14.

On October 21, 2016, Ms. Hampton and "her sole assigned partner, Aquil Abdul-Salaam," also African American, allegedly "transported a known dangerous juvenile inmate to a medical appointment." *Id.* ¶ at 4, 15–16. The juvenile inmate recently had "assaulted a seasoned male staff member at the facility . . . [allegedly] choking and severely injuring the staff member, requiring hospitalization." *Id.* at 4, ¶ 17. The same juvenile inmate allegedly previously had "attempted to kick out the doors of the transport van" while Ms. Hampton was transporting him, causing her "to pull over and await the arrival of additional staff to proceed safety." *Id.*

On this occasion, the juvenile inmate allegedly "was placed in the most restrictive mechanical restrains [sic] available and permissible by [D]efendant's rules and policies, including leg shackles, handcuffs and a belly chain secured around his waist attached to the handcuffs." *Id.* at 4, ¶ 18.

The juvenile's appointment allegedly took place in a public physician's office, where "children and elderly members of the public and others [allegedly] were present." *Id.* at 4, ¶ 19. While in the physician's office, the juvenile inmate allegedly "defeated his restraints," meaning that the unsecured belly chain attached to his handcuffs allegedly was "ready [for] use as a

deadly weapon." *Id.* ¶ 20. He "refused to comply" with Ms. Hampton and fled the medical office. *Id.* at 5, ¶ 21.

Ms. Hampton and Mr. Abdul-Salaam allegedly "followed the inmate at a safe distance according to defendant Judicial Branch's policy[] but were unable to safety restrain him and return him to custody." *Id.* at 5, ¶ 22. They returned to work, "and each completed incident reports of the escape." *Id*. at 5, ¶ 24. "The inmate was later rearrested and returned to [D]efendant Judicial Branch's custody." *Id.* at 5, ¶ 23.

Before the end of her shift later that day, Mr. Fitzgerald, Superintendent of the Judicial Branch, and Jimmy Gomez, shift supervisor of the Judicial Branch, allegedly approached Ms. Hampton and told her to hand in her badge. *Id.* at 5, ¶¶ 25–26. She alleges that Mr. Fitzgerald and Mr. Gomez "immediately placed [her] on unpaid administrative leave" before any investigation had been conducted. *Id.* at 5, ¶ 27. Ms. Hampton allegedly "remained on unpaid administrative leave for a protracted time," as Defendants allegedly "refused and failed to conduct a timely investigation . . . . " *Id.* at 6, ¶ 30.

Ms. Hampton also believes that "[D]efendants reported [her] to the Connecticut Department of Children and Families (DCF), alleging physical and emotional neglect of the inmate." *Id.* at 5, ¶ 28. She allegedly appealed the DCF investigation which concluded neglect. *Id.* at 5, ¶ 29.

On October 24, 2016, Ms. Hampton allegedly "was placed on Administrative Suspension without pay . . . ." *Id.* at 7, ¶ 37. She remained on unpaid suspension until she was terminated over a year later. *Id.*

On February 3, 2017, Defendants allegedly terminated Ms. Hampton. *Id.* at 6, ¶ 31. Ms. Hampton alleges that the decision to suspend without pay and subsequently terminate her

employment was recommended by Ms. Fuller, *id.* ¶ 32, and that Mr. Grant "made the final decision to suspend without pay and to terminate the plaintiff . . . ," *id.* at 6, ¶ 33. Ms. Hampton alleges "the defendants relied upon the unsupported findings of DCF to punish the plaintiff" and that the unsupported findings "were reversed on appeal to that agency and set aside on April 2, 2018." *Id.* at 6, ¶ 34. In her view, DCF relied on testimony "neither credible nor substantiated by objective witnesses." *Id.* ¶ 35.

On March 16, 2018, an arbitrator found "that the defendant Judicial Branch 'lacked just cause' to suspend [ P]laintiff, and ordered she be made whole for the period of suspension, from October 24, 2016 to February 3, 2017." *Id.* at 7, ¶ 37.

On May 23, 2018, Ms. Hampton's termination "was converted to a thirty workday suspension without pay[,]" in accordance with a second Union Arbitration Award. *Id.* Ms. Hampton received lost wages and employment benefits, less the thirty workday period of suspension. *Id.* She received no overtime pay for the period between October 24, 2016 and May 23, 2018.

Ms. Hampton alleges that she was treated more harshly than similarly situated employees who are not African American. JTO Carissa Laudano, who is Caucasian, allegedly "was involved in a substantially similar incident with the same defendants in the instant matter." *Id.* at 7, ¶ 39. When a juvenile inmate escaped Ms. Laudano's care, she allegedly failed to follow the Judicial Branch's policy; and both "the inmate and [Ms.] Laudano were injured as a result and both required medical attention . . . ." *Id.* at 8, ¶ 41.

Ms. Laudano allegedly was neither placed on unpaid administrative leave pending an investigation nor terminated. *Id.* at 8, ¶ 42. Although she had only been with the Judicial Branch less than a year, Ms. Laudano allegedly was promoted. *Id.* at 8, ¶ 43.

Ms. Hampton received a right to sue letter from the Equal Employment Opportunities Commission and timely filed this action. *Id.* at 8, ¶ 45.

### B.  Procedural History

On August 24, 2018, Ms. Hampton filed a Complaint against the Judicial Branch State of Connecticut, Stephen Grant, Deborah Fuller, and John Fitzgerald. Compl., ECF No. 1 (Aug. 24, 2018).

On January 16, 2019, Defendants filed a timely motion to dismiss. Mot. to Dismiss, ECF No. 24, (Jan. 16, 2019).

On May 2, 2019, Defendants filed a reply in support of their motion to dismiss, noting Plaintiff's failure to respond. Reply, ECF No. 31 (May 2, 2019).

On July 22, 2019, Plaintiff filed an objection to the motion to dismiss, and the Court held a motion hearing. Obj., ECF No. 38 (July 22, 2019); Minute Entry, ECF No. 39 (July 23, 2019).

On July 24, 2019, the Court dismissed Ms. Hampton's federal claims and declined to exercise supplemental jurisdiction over her state law claims. Ruling and Order, ECF No. 40 (July 24, 2019).

On August 28, 2019, Ms. Hampton filed an Amended Complaint. Am. Compl.

On September 11, 2019, Defendants filed a motion to dismiss the Amended Complaint. Defs.' Mot.; Supp. Mem., ECF No. 43–1 (Sept. 11, 2019) ("Defs.' Mem.").

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The

plaintiff therefore must make a *prima facie* case showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011), *as amended* (Sept. 23, 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F. 2d 361, 365 (2d Cir. 1986)).

A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

**B.  Rule 12(b)(5)**

A motion to dismiss under Federal Rule of Civil procedure 12(b)(5) due to insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007); *see* Fed. R. Civ. P. 12(b)(5).

"Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

### C. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 U.S. 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

### A.  Timeliness of Title VII Claim

Under Title VII, "a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (citing 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006)). The complainant has 180 days form the adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Then, "the complainant must await dismissal of the administrative charge (or a failure to act)[.]" *McPherson*, 457 F.3d at 214.

"A private Title VII plaintiff must also first receive a 'right-to-sue' letter from the EEOC." *Id.* at 213 (citing 42 U.S.C. § 2000e-5(f)(1); *Holowecki*, 440 F.3d at 563). Once a complainant receives a "right-to-sue" letter from the EEOC, he or she has ninety days to file a civil action in the appropriate federal court. 42 U.S.C. § 2000e-5(f)(1); *see also McPherson*, 457 F.3d at 214 ("Such notification is called a 'right-to-sue' letter because the notification is a prerequisite to suit (even though the notification does not indicate that *all* of the statutory prerequisites for suit have been met, and therefore does not bespeak a 'right').").

"Title VII's charge-filing requirement is not of jurisdictional cast. . . . Separate provisions of Title VII, § 2000e-5(e)(1) and (f)(1), contain the Act's charge-filing requirement." *Fort Bend Cty., Tex v. Davis*, 139 S. Ct. 1843, 1850–51 (2019). While not jurisdictional, "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one[.]" *Id.*

Defendants argue that they raised the exhaustion issue in their previous motion to dismiss and Plaintiff's Amended Complaint "still fails to show that the Plaintiff complied with this mandatory filing rule." Supp. Mem. at 9. The initial Complaint was not filed within ninety days of receipt of the right-to-sue letter from the Equal Employment Opportunity Commission. *Id.* at 7–8. In their view, Ms. Hampton's allegation that she received the letter on May 26, 2019 (exactly ninety days before the filing of the initial Complaint), is self-serving and insufficient "to rebut the applicable three-day presumption of receipt." *Id.* at 9. Her action is therefore untimely and should be dismissed. *Id.* at 10.

The Court disagrees with Defendants.

The Court allowed Ms. Hampton to replead her Title VII claim "to state facts indicating whether or how she complied with the charge-filing requirement." Order & Ruling on Mot. to Dismiss Compl., ECF No. 40 (July 24, 2019) ("Previous Ruling"). The attached right-to-sue letter was mailed on May 18, 2018. Pl.'s Ex. A—Letter from the EEOC, ECF No. 41-1 (Aug. 28, 2019) ("Right to Sue Letter"). There is a stamp stating "RECEIVED May 22, 2018" on the document, indicating the date it was received in the EEOC Boston office received. *Id.* The envelope from the EEOC Boston Office indicates the letter was mailed on May 22, 2018. Pl.'s Ex. B—Envelope from EEOC Boston, ECF No. 41-2 (Aug. 28, 2019) ("Envelope").

Federal Rule of Civil Procedure 6(d) presumes that it takes three days to receive a letter once mailed. *See Patterson v. Conn. Dep't of Labor Adm'r*, No. 3:11-cv-1237 (JCH), 2015 WL

507534, at *2 (D. Conn. Feb. 5, 2012) ("The justification for giving three additional days under Rule 6(d) . . . appears to be that it takes some time for a document to get from the serving party at the moment of transmission, to the receiving party at the moment of receipt, and that, as a practical matter, an estimate of three business days is an appropriate default rule to eliminate debate about whether the date of actual notice is relevant, and, if so, what that date is in each individual case." (citing *United States v. James*, 146 F.3d 1183, 1184 (9th Cir. 2019)); *see also Lunaridini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, "Some authority exists for the proposition that the three-day extension of time for mail service found in Federal Rule of Civil Procedure 6(d) creates a rebuttable presumption that a right-to-sue letter is received three days after it is mailed[.]" (citing *Sherlock v. Monefiore Med. Ctr.*, 84 F.3d 522, 525–26 (2d Cir. 1996); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 (1984) (per curiam) (*dicta*)).

May 22, 2018 was a Tuesday. Applying the three-day presumption, the letter would have been received on Friday, May 25, 2018. Plaintiff alleges that she received the letter on May 16, 2018, which the Court takes as a scrivener's error, and interprets the alleged receipt as May 26, 2018. Am. Compl. at 8–9, ¶ 45 ("The postmark . . . indicates that the Right to Sue was mailed no sooner than the evening of May 22, 2018 from Boston, . . . The plaintiff received the Right to Sue letter on May 16, 2018, and filed the instant action on August 24, 2018, the ninetieth day from receipt of the E.E.O.C. Right to Sue."). But Ms. Hampton's allegation that she received the Right to Sue Letter on May 26, 2018, as opposed to May 25, 2018, is an unsupported and self-serving allegation. *See Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) (finding plaintiff's unsupported allegation of the date of receipt of a right-to-sue letter was insufficient "to rebut the applicable three-day presumption of receipt").

"Neither [the] proffer of inadmissible evidence nor [Plaintiff's] lack of recollection" is sufficient to "rebut the presumption" that the letter was received within three days. *Sherlock*, 84 F.3d at 526. "If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Id.* at 526. Ms. Hampton attaches the letter and the envelope, but offers no other evidence supporting her claim that she received the letter on May 26, 2018, rather than May 25, 2018.

Given that this is a motion to dismiss and construing the allegations most favorably to Ms. Hampton, however, it is plausible that the Right to Sue Letter reached her on May 26, 2018. *See Friedman v. Swiss Re Am. Corp.*, 512 F. App'x 94, 96 (2d Cir. 2013) (finding "the district court should have accepted as true the statement in [plaintiff's] complaint" as to the date of receipt, which was supported by a declaration under penalty of perjury in the complaint).

The Court thus will not dismiss Ms. Hampton's Title VII claim because of exhaustion.[1]

**B.  Sections 1981 & 1983**

**1.  Service & Personal Jurisdiction over Stephen Grant**

Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007).

---

[1] Although Ms. Hampton brings her Title VII claim against all Defendants, Am. Compl. ¶ 5, her claim can only proceed against the Judicial Branch. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995), *abrogated on other grounds by Kairam v. West Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."); *McBride v. Routh*, 51 F. Supp. 2d 153, 157 (D. Conn. 1999) ("*Tomka* and the language of Title VII compel a holding that only employer-entities have liability under Title VII.").

Once a defendant challenges the validity of service, "it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

In analyzing a Rule 12(b)(5) motion, the Court examines the service requirements under Federal Rule of Civil Procedure 4. *El Ex-Relatione Daws v. Whitehead*, 2019 WL 5394578, at *4 (D. Conn. Oct. 22, 2019). Service may be effectuated by "delivering a copy of the summons and of the complaint to the individual personally;" leaving a copy of the summons and complaint "at the individuals' dwelling or usual place of abode"; or delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Service may also be proper if executed in accordance with State law where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1).

Connecticut General Statute § 52-57(a) provides that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). In civil actions against municipal employees, Connecticut law allows for service of process "upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the employee." Conn. Gen. Stat. § 52-57(b)(7). In civil actions against state employees, Connecticut law allows for service of process through the Attorney General in Hartford, Connecticut. Conn. Gen. Stat. § 52-64(a).

Mr. Grant argues that he has personally appeared in this action and still has not yet been served. Supp. Mem. at 10. Because of the insufficient process, Mr. Grant contends that the Court

lacks personal jurisdiction over him and any claims against him in his individual capacity must be dismissed. *Id.*

The Court agrees.

Here, counsel has entered an appearance for Mr. Grant in his individual capacity and Mr. Grant alleges that, to date, he has not been served. Plaintiff submits no explanation nor challenges the failure to serve. As Ms. Hampton has not served Mr. Grant in a manner which would satisfy Rule 4(e), the Court considers whether Ms. Hampton has satisfied service requirements under Connecticut law.

It is well-established that service through § 52-64(a) effectuates service to a defendant in their official capacity but does not effectuate service in a defendant's individual capacity. *Harnage v. Lightner*, 163 Conn. App. 337, 344–45 (2016), *aff'd*, 328 Conn. 248 (2018). Thus, "§ 52-57(a) applies when a state employee is sued in his individual capacity." *Id.* at 342. *See also Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006) (holding Conn. Gen. Stat. § 52-64 "does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity"). Ms. Hampton has not served Mr. Grant in accordance with § 52-57(a), nor has she proved that any other service was adequate.

Accordingly, Ms. Hampton's Title VII, Section 1981, Section 1983, and state law claims against Mr. Grant in his individual capacity will be dismissed.

## 2. Section 1981 Claim

Section 1981, enacted as part of the Civil Rights Act of 1866, provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. In 1991, Congress amended the statute to add a definition of "make and enforce contracts" that included

the "termination of contracts, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372–73 (2004). In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), the United States Supreme Court determined that the protections referenced in Section 1981 could only be enforced through Section 1983: "We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735.

The Second Circuit has reaffirmed the Supreme Court's holding in *Jett* and has declined to take up Section 1981 claims separately from Section 1983 claims when those Section 1981 claims are brought against state actors. *See Gladwin v. Pozzi*, 402 F. App'x 603, 605 (2d Cir. 2010) ("[Plaintiff]'s § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983."); *Burbank v. Office of Att'y Gen. of Conn.*, 240 F. Supp. 2d 167, 174 (D. Conn. 2003) ("Some doubt had been cast on *Jett*'s viability by the addition in 1991 of subsection (c) to § 1981, which states that '[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law' . . . However, most courts have held that '[b]ecause Congress neither expressed its intent to overrule *Jett*, nor explicitly created a remedy against state actors in addition to § 1983, we are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*.'" (quoting *Felton v. Polles*, 315 F.3d 470, 480–81 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Defendants oppose Ms. Hampton's Section 1981 claim, but only discuss Ms. Hampton's Section 1983 claim. Defendants refer to the Court's previous Order and argue the Court should

14

reach the same conclusion because Plaintiff "still fails to allege facts that lead to an inference of intentional discrimination on the parts of the Individual Defendants as is required." Defs.' Mem. at 13; Previous Order at 21.

The Court previously held that Ms. Hampton did not assert a cause of action, separate and apart from her Section 1983 claim, under Section 1981. Previous Order at 15. The Court referred to the initial Complaint. *Id.* (citing Compl. at 12, ¶ 52 ("The conduct of defendants Grant, Fuller, and Fitzgerald constitute discrimination and disparate treatment in violation of equal protection, due process, and 42 U.S.C. Sections 1981 and 1983.")). In her Amended Complaint, Ms. Hampton includes the exact same allegation and does not further discuss or allege facts related to her Section 1981 claim. Am. Compl. at 13, ¶ 52 ("The conduct of the defendants Grant, Fuller and Fitzgerald constitute discrimination and disparate treatment in violation of equal protection, due process, and 42 U.S.C. Sections 1981 and 1983."). The Court therefore will proceed as it did with the first motion to dismiss.

The Court will dismiss Ms. Hampton's Section 1981 claim and address all alleged violations of Section 1981 through her Section 1983 claim. *See Collymore v. City of N.Y.*, 767 F. App'x 42, 45 n.2 (2d Cir. 2019) (finding "the district court properly construed [plaintiff's] Section 1981 claims as Section 1983 claims because 'the express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units" (emphasis in the original) (internal quotation marks omitted) (quoting *Duplan v. City of N.Y.*, 888 F.3d 612, 619 (2d Cir. 2018)); *Williams v. State of Conn. Dep't of Corr.*, No. 3:16-cv-1612 (VAB), 2017 WL 2838081, at *6 (D. Conn. June 30, 2017) ("To the extent that Mr. Williams does not seek to assert an independent claim under Section 1981, Defendants' motion to dismiss is granted with respect to this claim. All alleged

violations of Section 1981 will be addressed exclusively through Mr. Williams' Section 1983

claim.").

### 3.  Section 1983 Claim

"Title VII is not the exclusive remedy for discrimination claims against state or municipal

employers, where those claims derive from violations of Constitutional rights." *Annis v. Cty. of*

*Westchester, N.Y.*, 36 F.3d 351, 251 (2d Cir. 1994) (collecting cases). When employment

discrimination claims are asserted under § 1983, based on alleged equal protection or due

process violations, they are generally analyzed under the same initial standard as Title VII claims

to determine whether they state a *prima facie* case of employment discrimination: the

*McDonnell-Douglas* burden shifting framework. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d

206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of

discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in

employment in violation of § 1981 or the Equal Protection Clause . . . .") (collecting cases);

*Sorlucco v. N.Y.C. Police Dep't*, 888 F.2d 4, 7 (2d Cir. 1989) ("The Supreme Court has outlined

a three-step analysis of factual issues in Title VII claims. By analogy, the same analysis applies

to claims under section 1983." (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–

46 (1981) and *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)) (collecting

cases); *St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 237 ("Employment

discrimination claims under § 1983 are evaluated under the same analytical framework as those

brought under Title VII." (citations omitted)).

Following a plaintiff's establishment of a *prima facie* case of discrimination, "a

presumption arises that more likely than not the adverse conduct was based" on impermissible

factors. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 73, 83 (2d Cir. 2015). The burden

then shifts to the defendant "to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant is able to articulate a nondiscriminatory reason, "the burden shifts back to the plaintiff to prove that the [defendant's] reason 'was in fact pretext' for discrimination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

There are, however, some differences between claims under Title VII and under Section 1983. In contrast to Title VII, first "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or private party acting under color of state law." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). Second, "a § 1983 claim 'can be brought against an[y] individual' responsible for the discrimination." *Naumovski v. Norris*, 924 F.3d 200, 212 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 88). Third, "§ 1983 does not permit vicarious liability[;]" a defendant must have "*personally* violated a plaintiff's constitutional rights" to succeed in a Section 1983 action. *Id.* (emphasis in the original) (citations omitted). Finally, the biggest distinction between the two is causation—Section 1983 requires a plaintiff to "establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment." *Id.* at 214.

Accordingly, after establishing a defendant acted under the color of state law, to state a claim for employment discrimination under Section 1983, a plaintiff must allege (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms of conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999)). Such a "change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady*, 993 F.2d at 136).

"[A] plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, . . . to defeat a motion to dismiss." *Vega*, 801 F.3d at 84.

Defendants Grant, Fuller, and Fitzgerald argue that Ms. Hampton has "failed to allege any facts that support any personal and intentional discrimination by" them as individuals, "as is required." Supp. Mem. at 13. They argue that the Amended Complaint "still fails to allege facts that lead to an inference of intentional discrimination on the parts of the Individual Defendants . . . ." *Id.*; Am. Compl. ¶ 42. In their view, Ms. Hampton continues to use "conclusory and unspecific language" which is insufficient to support an inference of discrimination under Section 1983. *Id.* at 14.

The Court agrees with Defendants.

Ms. Hampton's gender places her in a protected class and termination from employment constitutes an adverse employment action. In her Amended Complaint, Ms. Hampton alleged facts giving rise to an inference of discrimination that, before the October 21, 2016 incident, a

similarly-situated white employee, Carissa Laudano, "was involved in a substantially similar incident" but was "neither placed on unpaid administrative leave pending an investigation outcome, nor terminated." Am. Compl. at 7–8, ¶¶ 39–42.

While these facts, as pleaded, could be sufficient in the Title VII context, under Section 1983, the facts must give rise to an inference of intentional discrimination regarding the specific defendants against whom the claim is brought, and these facts do not do so. *Patterson* 375 F.3d at 226 ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional[.]"); *see also Naumovski*, 934 F.3d at 215 ("[A] § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action."). Moreover, the § 1983 claim is brought against Ms. Fuller and Mr. Fitzgerald in their individual capacities. Am. Compl. at 12–13, ¶¶ 47–52.[2]

To establish liability against a defendant in his or her individual capacity under Section 1983, a plaintiff must establish personal involvement. "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson*, 375 F.3d at 229 (citations omitted).

Ms. Hampton has adequately alleged the personal involvement of Ms. Fuller and Mr. Fitzgerald in her suspension and termination, but she has failed to plead any facts demonstrating that Ms. Fuller and Mr. Fitzgerald were also involved in any disciplinary action against Ms.

---

[2] The Court notes Mr. Grant was also named in his individual capacity, but all claims against Mr. Grant in his individual capacity were dismissed.

Laudano. She therefore has not pled any facts suggesting that the circumstances in which she was suspended and then terminated give rise to an inference of intentional discrimination.

Accordingly, Ms. Hampton has failed to state a *prima facie* case of discrimination under Section 1983 against Ms. Fuller and Mr. Fitzgerald, and this claim will be dismissed.

### C.  Retaliation[3]

To establish a *prima facie* case of retaliation under Title VII, the plaintiff bears the initial burden to submit "evidence that she 'participated in a protected activity,' 'suffered an adverse employment action,' and 'that there was a causal connection between her engaging in the protected activity and the adverse employment action.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)). "[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *White*, 548 U.S. at 57). Plaintiffs must "plausibly plead a connection between the act and [her] engagement in protected activity. A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* Finally, Title VII's "antiretaliation provision protected an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67.

Defendants argue that the Amended Complaint "fails to state a plausible claim of retaliation." Supp. Mem. at 15. They contend that the Amended Complaint lacks factual allegations indicating a specific, protected activity that Ms. Hampton engaged in. *Id.*

---

[3] Ms. Hampton refers to the creation of a hostile work environment, Am. Compl. at 2, ¶ 3; but her Amended Complaint includes no factual allegations specifically supporting a Title VII hostile work environment claim. Furthermore, when referencing her Title VII claim in the Amended Complaint, Ms. Hampton focuses on retaliation. Accordingly, the Court construes her Title VII claim to be a retaliation claim, not a hostile environment claim.

Furthermore, they argue that Ms. Hampton "has not alleged a sufficient causal connection between her alleged protected activity and the alleged retaliatory adverse actions." *Id.* at 16. The Amended Complaint, in their view, "does not allege any protected activity before she was disciplined." *Id.* (emphasis omitted). Defendants contend that Ms. Hampton "fails to specify how the alleged complaints of unlawful conduct amount to protected activity for the purposes of Title VII or when said alleged protected activity took place." *Id.* at 17. Because of this, they argue, her retaliation claim under either Title VII or Section 1983 must fail. *Id.*[4]

The Court agrees.

Ms. Hampton has not pled any facts demonstrating that she engaged in a protected activity, that she suffered an adverse employment action, or a causal connection between the protected activity and adverse employment action. *See Gorzynski*, 596 F.3d at 110–11 (plaintiff expressed concerns on behalf of an African American co-worker and was discharged within a month). Ms. Hampton was placed on administrative leave on October 24, 2016, but does not specifically identify what protected activity she engaged in or when such activity occurred (before or after her administrative leave). *See Melendez v. City of New Haven*, No. 3:13-cv-860 (RNC), 2013 WL 6859941, at *2 (D. Conn. Dec. 30, 2013) ("Here, although plaintiff claims that the reprimand and discipline he received . . . were retaliatory, he does not state a plausible claim of retaliation by [his supervisor] prior to the filing of the plaintiff's official complaint of discrimination"). Thus, there is no protected activity from which discrimination could be inferred.

Accordingly, Ms. Hampton's retaliation claim will be dismissed.

---

[4] It is again unclear whether Ms. Hampton intended to bring a retaliation claim under Section 1983. Because her references to retaliation in the Amended Complaint appear when she refers to her Title VII claims, the Court construes Ms. Hampton to bring only a Title VII retaliation claim. Am. Compl. ¶¶ 1–3, 46.

### D.  STATE LAW CLAIMS

Ms. Hampton again brings state law claims in her Amended Complaint: one under the

Connecticut Fair Employment Practices Act ("CFEPA") and one claim for intentional infliction

of emotional distress.

Defendants only moved to dismiss Plaintiff's Title VII and Section 1983 claims, relying

on the Court's previous order which had dismissed those claims in the original Complaint. Supp.

Mem. at 7. The Court, however, did not dismiss those claims with prejudice, and Ms. Hampton

now has again brought CFEPA, failure to train, and intentional infliction of emotional distress

claims in her Amended Complaint. As the Defendants did not move to dismiss these claims, they

will be allowed to proceed to summary judgment.

### E.  PUNITIVE DAMAGES

42 U.S.C. § 1981a prohibits punitive damages against governments, government

agencies, or political subdivisions for Title VII violations. 42 U.S.C. § 1981a(b)(1). "While

Section 1981a, like Title VII, abrogates state sovereign immunity, thus permitting recovery of

*compensatory* damages against government entities which have violated Title VII's provisions,

government entities are specifically exempted from the remedy of *punitive* damages[.]" *Ettinger*

*v. State Univ. of N.Y. Coll. of Optometry*, No. 95 Civ. 9893 (RWS), 1998 WL 91089, at *7

(S.D.N.Y. Mar. 1998).

Defendants argue that Ms. Hampton may not be awarded punitive damages against the

State of Connecticut, the Judicial Branch, and the individual defendants in their official

capacities. Supp. Mem. at 19.

The Court agrees.

The State of Connecticut, the Judicial Branch, and the individual Defendants sued in their official capacities fall among those exempted from punitive damages articulated in Section 1981a.

Accordingly, any claim for punitive damages against the State of Connecticut, the Judicial Branch, or the individual Defendants in their official capacities will be dismissed.

### F.   JURY TRIAL

"Where a Title VII plaintiff 'seeks compensatory or punitive damages[,] any party may demand a trial by jury.'" *Robinson v. Dep't of Motor Vehicle*, No. 3:16-cv-1148 (JCH), 2017 WL 2259767, at *13 (D. Conn. May 23, 2017). In contrast, "lost wages [claims] under Title VII, . . . are equitable and, therefore, need not be tried by a jury." *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 152 (2d Cir. 20110). Equitable remedies include claims for back pay or font-pay. *Broadnax v. City of New Haven*, 415 F.3d 265 (2d Cir. 2005).

Defendants argue that Ms. Hampton is not entitled to a jury trial "as to her request for back pay, front pay and other equitable relief." Supp. Mem. at 18.

The Court agrees that Ms. Hampton's claims for back pay, front pay, and other equitable relief will not be decided by a jury; but her claims for compensatory damages, which ordinarily would be resolved by a jury, can be resolved by a jury.

Ms. Hampton seeks compensatory damages, "including but not limited to back pay, lost overtime pay, lost vacation pay, lost seniority and other employment-related benefits[.]" Am. Compl. 13. As her request includes equitable damages, the Court will grant the motion to dismiss as to a jury trial on the equitable damages. *See Robinson*, 2018 WL 2249767 at *13 (denying jury trial on the issue of back pay, but allowing it on the issue of compensatory damages); *Perez v. Conn. Dep't of Corr. Parole Div.*, 2013 WL 4760955, at *7 (D. Conn. Sept. 4, 2013)

23

("Whether in the form of back pay or front pay, a lost wages award is a purely equitable remedy that does not trigger a Title VII plaintiff's jury right. Hence, [the plaintiff's] jury demand is struck as to those issues exclusive to equitable relief under Title VII, including the award of lost wages." (citing *Broadnax*, 415 F.3d at 271)); *cf. Thomas*, 652 F.3d at 152 (allowing jury trial to proceed where defendants never objected to a jury trial on equitable damages because "economic damages under the statute may nevertheless be tried by a jury if both sides consent").

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED in part, DENIED in part.** As to her federal claims, the only remaining claim will be Ms. Hampton's Title VII claim against the Judicial Branch. The three state law claims—violation of the Connecticut Fair Employment Practices Act, failure to train, and intentional infliction of emotional distress—will proceed to at least the summary judgment stage.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of June, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE