**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECRETT HAMPTON,<br>        *Plaintiff*,<br><br>        v.<br><br>STATE OF CONNECTICUT JUDICIAL<br>BRANCH, DEBORAH FULLER, and JOHN<br>FITZGERALD,<br>        *Defendants.* | No. 3:18-cv-1445 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Secrett Hampton ("Plaintiff") has sued the State of Connecticut Judicial Branch

("Judicial Branch"), Deborah Fuller, and John Fitzgerald (collectively, "Defendants"). Ms.

Hampton alleges disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991; violation of the Connecticut Fair Employment

Practices Act, Conn. Gen. Stat. § 42-110b(a) ("CFEPA"); failure to train and supervise; and

intentional infliction of emotional distress. Am. Compl. at 1–2 ¶¶ 1–3, 5–6, ECF No. 41 ("Am.

Compl.").

Defendants have filed a motion for summary judgment. Mot. for Summ. J., ECF No. 101-

1 ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED** as

to the remaining federal claim, Title VII. The remaining state law claims are dismissed without

prejudice to refiling in state court.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   Factual Background[1]

Ms. Hampton, who identifies herself as an "African American, black woman," works for the Judicial Branch as a Juvenile Detention Transportation Officer ("JTO"). Defs.' Local Rule 56(a)1 Statement of Undisputed Facts ¶ 1, ECF No. 101-2 ("Defs.' SOMF"); Pl.'s Local Rule 56(a)2 Statement ¶ 1 ("Pl.'s SOMF"); Pl.'s SOMF at 13 ¶ 1.

As part of her job, Ms. Hampton had responsibility for, among other things, transporting juvenile detainees to appointments in secure locations, such as courthouses, and unsecure locations, such as public medical facilities. Defs.' SOMF ¶ 2; Pl.'s SOMF ¶ 2.

When Ms. Hampton began working at the Judicial Branch, she attended a one to two-week training in Safe Crisis Management. Defs.' SOMF ¶ 16; Pl.'s SOMF ¶ 16. Ms. Hampton also participates in required annual training that includes Safe Crisis Management,[2] Suicide Prevention, Education on the Prison Rape Elimination Act, Boundaries and Ethics, Cultural Competency, CPR and First Aid, and Adolescent Development. Defs.' SOMF ¶ 14; Pl.'s SOMF ¶ 14. As part of her training, Ms. Hampton had to review the Judicial Branch's policies. Defs.' SOMF ¶ 15; Pl.'s SOMF ¶ 15.

---

[1] The facts are taken from Ms. Hampton's Local Rule 56(a) Statement, Defendants' Local Rule 56(a) Statement, and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

[2] Safe Crisis Management is a physical intervention technique that includes instructions about verbal de-escalation, application of physical restraints, and use of shackles. Defs.' SOMF ¶ 5; Pl.'s SOMF ¶ 5.

On October 21, 2016, Ms. Hampton and Aquil Abdul-Salaam ("Mr. Abdul-Salaam"), another JTO and Ms. Hampton's partner that day, had to transport a juvenile detainee, LS, to a medical appointment at a public medical facility. Def.'s SOMF ¶ 32; Pl.'s SOMF ¶ 32.

Ms. Hampton and Mr. Abdul-Salaam transported LS in mechanical restraints, which included a belly restraint that was connected to wrist shackles, as well as ankle shackles. Def.'s SOMF ¶ 39; Pl.'s SOMF ¶ 39.

Ms. Hampton and Mr. Abdul-Salaam brought LS to the third floor of the medical facility, where there was a lobby reception area and several members of the public. Defs.' SOMF ¶¶ 40–41; Pl.'s SOMF ¶¶ 40–41. Ms. Hampton did not identify any unusual safety concerns at this medical facility, outside of the typical risks, such as tables and chairs in the middle of the room, a large waiting area, and members of the public present. Def.'s SOMF ¶ 42; Pl.'s SOMF ¶ 42; Ex. 1 to Opp'n at 85:14–87:23, ECF No. 104-3 ("Hampton Dep.").

After they entered the lobby, LS asked to use the restroom in the waiting area. Defs.' SOMF ¶¶ 43–44; Pl.'s SOMF ¶¶ 43–44. LS had been in the restroom for three to ten minutes, during which time Ms. Hampton and Mr. Abdul-Salaam had not been communicating with him. Def.'s SOMF ¶ 50; Pl.'s SOMF ¶ 50. Typically, male JTOs supervise male juveniles using the bathroom, while female JTOs supervise female juveniles using the bathroom. Pl.'s SOMF at 15 ¶ 16.

Ms. Hampton and Mr. Abdul-Salaam did not frisk LS before he entered the bathroom or after he finished in the bathroom, despite the Judicial Branch policy that requires such a frisk. Def.'s SOMF ¶¶ 45–46; Pl.'s SOMF ¶¶ 45–46; Pl.'s SOMF at 16 ¶ 22. Neither Ms. Hampton nor Mr. Abdul-Salaam checked LS's shackles after he came out of the restroom. Def.'s SOMF ¶ 52; Pl.'s SOMF ¶ 52.

After LS came out of the restroom, LS had his hands in his pants. Pl.'s SOMF at 16 ¶ 25. When Ms. Hampton instructed LS to remove his hands, LS refused. *Id.* Ms. Hampton and Mr. Abdul-Salaam then escorted LS to the medical exam room, which was a ten-by-fourteen-foot room secured with a door. Def.'s SOMF ¶ 54; Pl.'s SOMF ¶ 54. Ms. Hampton did not notice anything atypical about the exam room. Def.'s SOMF ¶ 54; Pl.'s SOMF ¶ 54.

During the first portion of the appointment, a medical professional was in close physical proximity to LS. Def.'s SOMF ¶ 55; Pl.'s SOMF ¶ 55. After an initial examination, the medical professional left the room and LS revealed to Ms. Hampton and Mr. Abdul-Salaam that he had removed his belly chain. Def.'s SOMF ¶ 56; Pl.'s SOMF ¶ 56. The belly chain had a padlock attached to one end such that it could have been used as a weapon. Def.'s SOMF ¶ 57; Pl.'s SOMF ¶ 57.

Ms. Hampton and Mr. Abdul-Salaam tried to de-escalate the situation by informing LS of the consequences of his actions in order to persuade him not to try to escape. Def.'s SOMF ¶ 59; Pl.'s SOMF ¶ 59. Ms. Hampton initially remained seated while she and Mr. Abdul-Salaam talked to him. Def.'s SOMF ¶ 61; Pl.'s SOMF ¶ 61.

Neither Ms. Hampton nor Mr. Abdul-Salaam approached LS or attempted to physically block the exam room door. Def.'s SOMF ¶ 62; Pl.'s SOMF ¶ 62. Ms. Hampton and Mr. Abdul-Salaam also did not attempt to use physical force to confront or restrain LS while in the exam room. Def.'s SOMF ¶ 63; Pl.'s SOMF ¶ 63.

LS then walked out of the exam room and into the lobby. Def.'s SOMF ¶ 64; Pl.'s SOMF ¶ 64. Ms. Hampton and Mr. Abdul-Salaam followed LS into the lobby but did not pursue him beyond that point. Def.'s SOMF ¶ 66; Pl.'s SOMF at 21 ¶ 55. After LS left the lobby area, Ms.

Hampton had no further contact with him, Def.'s SOMF ¶ 70; Pl.'s SOMF ¶ 70, and LS was not apprehended for twenty-eight days, Def.'s SOMF ¶ 71; Pl.'s SOMF ¶ 71.

After this incident, Judicial Branch employees, Ms. Fuller[3] and Mr. Fitzgerald,[4] reviewed Ms. Hampton's conduct and recommended to Mr. Grant, the Executive Director of the Court Support Services Division of the Judicial Branch, that Ms. Hampton should be terminated. Def.'s SOMF ¶ 75; Pl.'s SOMF ¶ 75. Mr. Grant ultimately decided to terminate Ms. Hampton after consulting with Keisha Henry, Karl Alston, Mr. Fitzgerald, and Ms. Fuller, and considering documentary evidence including the incident report prepared by Ms. Hampton, the incident summary prepared by Jimmy Gomez, the pre-investigative report, and the Department of Children and Families ("DCF") investigation.[5] Def.'s SOMF ¶ 76; Pl.'s SOMF ¶ 76.

The Judicial Branch initially suspended Ms. Hampton without pay, and on February 3, 2017, after its investigation concluded, the Judicial Branch terminated her employment. Pl.'s SOMF at 14 ¶ 10.

On April 2, 2018, the DCF findings were reversed on administrative appeal and set aside. *Id.* at 22 ¶ 63. On May 23, 2018, Ms. Hampton's termination was converted to a thirty-workday suspension without pay. *Id.* at 22 ¶ 67.

### B.  Procedural History

On August 24, 2018, Ms. Hampton filed a Complaint alleging Title VII, CFEPA, section 1983, failure to train and supervise, and intentional infliction of emotional distress claims.

---

[3] Ms. Fuller is the Director of Family/Juvenile Services at the Judicial Branch. Pl.'s SOMF at 22 ¶ 60.

[4] Mr. Fitzgerald is the Superintendent at the Judicial Branch. Pl.'s SOMF at 22 ¶ 60.

[5] The Judicial Branch is required to report incidents of juveniles escaping to DCF, which then prompts a DCF investigation. Def.'s SOMF ¶ 77. DCF is a separate state agency that conducted an independent investigation with the Judicial Branch having no role in the decision-making process. *Id.* ¶ 78; Pl.'s SOMF ¶ 78. DCF recommended that Ms. Hampton should be terminated. Def.'s SOMF ¶ 79; Pl.'s SOMF ¶ 79.

Compl, ECF No. 1.

On November 2, 2018, Defendants filed a motion for security for costs. Mot. for Security for Costs, ECF No. 10.

On November 5, 2018, the Court granted the motion for security for costs. Order, ECF No. 13.

On December 14, 2018, Defendants filed a motion for default based on Ms. Hampton's failure to pay the security for costs bond. Mot. for Default, ECF No. 17.

On December 17, 2018, Ms. Hampton posted bond, and on December 20, 2018, Defendants withdrew the motion for default. Mot. to Withdraw Mot. for Default, ECF No. 20.

On December 21, 2018, the Court found Defendants' motion for default and motion to withdraw moot in light of Ms. Hampton posting bond. Order, ECF No. 21; Order, ECF No. 22.

On January 16, 2019, Defendants filed a motion to dismiss, Mot. to Dismiss, ECF No. 24, and on January 17, 2019, Defendants filed a motion to stay discovery, Mot. to Stay Discovery, ECF No. 25.

On January 30, 2019, the Court granted the motion to stay discovery pending resolution of the motion to dismiss and entered a stay of discovery until May 1, 2019. Order, ECF No. 26.

On May 2, 2019, Defendants filed a reply in support of their motion to dismiss, noting the lack of response from Ms. Hampton. Reply to Resp. to Mot. to Dismiss, ECF No. 31.

On May 2, 2019, Defendants also filed a renewed motion to continue the stay of discovery. Renewed Mot. to Stay Discovery, ECF No. 32.

On May 3, 2019, the Court granted the renewed motion to stay and stayed discovery until August 2, 2019. Order, ECF No. 33.

On July 22, 2019, Ms. Hampton filed an objection to the pending motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 38.

On July 22, 2019, the Court held a status conference. Min. Entry, ECF No. 39.

On July 24, 2019, the Court issued a ruling and order granting the motion to dismiss. Ruling and Order on Mot. to Dismiss, ECF No. 40 ("Ruling on MTD Compl.").

On August 28, 2019, Ms. Hampton filed an Amended Complaint. Am. Compl.

On September 11, 2019, Defendants filed a motion to dismiss the Amended Complaint. Mot. to Dismiss Am. Compl., ECF No. 43.

On June 13, 2020, the Court granted in part and denied in part the motion to dismiss the Amended Complaint, leaving only the Title VII claim against the Judicial Branch and the three state law claims. Ruling and Order on Mot. to Dismiss Am. Compl., ECF No. 45 ("Ruling on MTD Am. Compl."). The Court dismissed all claims against Stephen Grant. *Id.*

On August 5, 2020, the parties submitted a joint Rule 26(f) report, Rep. of Rule 26(f) Planning Meeting, ECF No. 49, and on August 12, 2020, the Court entered a scheduling order, Initial Scheduling Order, ECF No. 50.

On October 29, 2020, the Judicial Branch filed a motion to compel. Mot. to Compel, ECF No. 52.

On December 13, 2020, the Court granted the motion to compel, Order, ECF No. 53, and on December 18, 2020, the Court amended its order to clarify the documents described and the deadline for production, Am. Order, ECF No. 54.

On January 20, 2021, the Judicial Branch filed a motion to dismiss. Mot. to Dismiss, ECF No. 55.

On January 27, 2021, the Court held a status conference, Min. Entry, ECF No. 57, and

issued an amended scheduling order, Am. Scheduling Order, ECF No. 58.

On January 27, 2021, the Court denied the motion to dismiss in light of the amended scheduling order. Order, ECF No. 60.

On July 29, 2021, the Judicial Branch filed a renewed motion to compel. Renewed Mot. to Compel, ECF No. 65.

On August 10, 2021, the Court issued a modified scheduling order, Order, ECF No. 67, and denied the motion to compel in light of the modified scheduling order, Order, ECF No. 68.

On November 4, 2021, the Court held a status conference. Min. Entry, ECF No. 72.

On December 28, 2021, the case was transferred to then U.S. District Judge Sarah Merriam for all further proceedings. Order of Transfer, ECF No. 74.

On January 21, 2022, Defendants filed a motion for summary judgment. Mot. for Summ. J., ECF No. 75.

On February 23, 2022, after Ms. Hampton failed to file a response to the motion for summary judgment, Judge Merriam issued an order to show cause as to why the case should not be dismissed for failure to prosecute. Order to Show Cause, ECF No. 76.

On March 16 and March 17, 2022, Ms. Hampton filed responses to the order to show cause. Resp. to Order to Show Cause, ECF No. 77; Resp. to Order to Show Cause, ECF No. 78.

On March 24, 2022, Ms. Hampton filed an objection to the motion for summary judgment. Obj. to Mot. for Summ. J., ECF No. 83.

On April 5, 2022, Judge Merriam held a show cause hearing. Min. Entry, ECF No. 87.

On April 7, 2022, Ms. Hampton filed a motion for extension of time to file a response to the motion for summary judgment *nunc pro tunc* and a motion for leave to file in excess pages. Mot. for Extension of Time to File *Nunc Pro Tunc*, ECF No. 88; Mot. for Leave to File Excess

Pages, ECF No. 89.

On April 13, 2022, Judge Merriam took Ms. Hampton's motion for extension of time and motion for leave under advisement and set a briefing schedule for the motion for summary judgment. Order, ECF No. 90.

On April 13, 2022, Ms. Hampton filed an Obj. to the Mot. for Summ. J., ECF No. 91.

On April 29, 2022, Defendants filed a reply in support of their motion for summary judgment. Reply to Resp. to Mot. for Summ. J., ECF No. 92.

On August 31, 2022, Judge Merriam terminated the motion for summary judgment without prejudice to re-filing. Order, ECF No. 93.

On September 14, 2022, Judge Merriam adopted a final amended scheduling order. Order, ECF No. 96.

On October 4, 2022, the case was transferred back to this Court.[6] Order of Transfer, ECF No. 98.

On February 28, 2023, Defendants filed a motion for leave to file excess pages for its Rule 56(a)1 statement. Mot. for Leave to File Excess Pages for 56(a) Statement in Supp. of Defs.' Mot. for Summ. J., ECF No. 99.

On March 1, 2023, the Court granted the motion for leave. Order, ECF No. 100.

On March 3, 2023, Defendants filed a motion for summary judgment. Mot.

On May 9, 2023, Ms. Hampton filed an objection to the motion for summary judgment. Obj. to Mot. for Summ. J., ECF No. 104-1 ("Opp'n").

On May 30, 2023 Defendants filed a reply in support of their motion for summary judgment. Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 107 ("Reply").

---

[6] Judge Merriam subsequently became a Circuit Judge on the United States Court of Appeals for the Second Circuit.

On June 28, 2023, the Court held a hearing by videoconference on the motion for summary judgment. ECF No. 109.

## II.  STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some

unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.   Title VII

Ms. Hampton's disparate treatment claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, a burden which "has been frequently described as minimal." *Walsh v.*

*N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). "If the plaintiff [makes out a prima facie

case], the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory

reason' for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (quoting

*McDonnell Douglas*, 411 U.S. at 802). If the defendant carries that burden, then the plaintiff may

no longer rely on the presumption that initially supported the prima facie case. *Id.* The

"plaintiff's admissible evidence must show circumstances that would be sufficient to permit a

rational finder of fact to infer that the defendant's employment decision was more likely than not

based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75 (quoting *Feingold v. New

York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Defendants argue that Ms. Hampton cannot meet her initial burden of establishing a

prima facie case of discrimination and, even if she could, Defendants had a legitimate, non-

discriminatory reason for terminating her and Ms. Hampton cannot show this reason was

pretextual. Mot. at 3–4.

The Court will address each argument in turn.

### a.  The Prima Facie Case

"To state a prima facie case of discriminatory discharge under Title VII, a plaintiff must

allege that: (1) [s]he falls within a protected group; (2) [s]he held a position for which [s]he was

qualified; (3) [s]he was discharged; and (4) 'the discharge occurred under circumstances giving

rise to an inference of discrimination.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir.

2014) (quoting *Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir. 2001)).

Defendants "presume that [Ms. Hampton] has met her burden with respect to the first

three prongs," but, in Defendants' view, Ms. Hampton "cannot meet her burden with respect to

the fourth prong." Mot. at 4. More specifically, Defendants argue that Ms. Hampton's

comparators, Ms. Laudano and Mr. Clancy,[7] are insufficient to support an inference of discrimination because they are not similarly situated to Ms. Hampton. *Id.* at 5–7.

Defendants argue that Ms. Laudano's conduct differed from Ms. Hampton's because Ms. Laudano pursued the juvenile that attempted to escape whereas Ms. Hampton did not frisk LS before or after he used the restroom, did not check his shackles after he used the restroom, did not attempt to block LS from leaving the medical exam room or otherwise physically restrain him while he was in the medical exam room, and did not pursue LS. *Id.* at 5–6. Defendants emphasize that Ms. Hampton's "misconduct . . . was an egregious erosion of the fundamental purpose of her job position – to prevent escapes." *Id.* at 6. Additionally, Defendants note that Mr. Abdul-Salaam was involved in the incident with Ms. Laudano and received the same treatment for his conduct there, and, as a result of the October 21, 2016 incident with Ms. Hampton, Mr. Abdul-Salaam was also terminated. *Id.*

Defendants argue that Mr. Clancy is also an improper comparator because "the Clancy incident occurred in a secure location with eight other detainees who were not confined in mechanical restraints." *Id.* at 7. Defendants note that Mr. Clancy was not permitted to keep his job as a result of his misconduct and that he resigned before his misconduct could have been investigated. *Id.* Defendants contend that "[h]ad [Mr. Clancy] not resigned, [Ms.] Fuller has attested that, based on the facts and circumstances known to her at the time, she also would have recommended his termination." *Id.*

In her opposition, Ms. Hampton argues that Ms. Laudano and Mr. Clancy, who are both white JTOs, are proper comparators and create a dispute of material fact concerning the fourth

---

[7] Defendants discuss several other potential comparators, Mot. at 5–8, however, the Court will focus only on Ms. Laudano and Mr. Clancy because Ms. Hampton stated in her opposition that she is only relying on these two individuals as comparators. Opp'n at 20.

prong of the prima facie case. Opp'n at 20. Ms. Hampton emphasizes her boss, Mr. Gomez's, statement that the October 2016 incident was "very similar" to the incident that involved Ms. Laudano because both incidents occurred "at a non-secure medical facility" and involved a juvenile "who ran outside" intending to escape. *Id.* at 20–21. Ms. Hampton argues that Ms. Laudano did not follow the Judicial Branch's policy when she pursued the escaping juvenile, which then resulted in Ms. Laudano and the juvenile requiring medical attention. *Id.* at 21. Ms. Hampton argues that the comparison to Ms. Laudano supports an inference of discrimination because Ms. Laudano was not put on administrative leave pending an investigation and was not terminated; instead, the Judicial Branch promoted her. *Id.* at 21–22. Additionally, Ms. Hampton argues that Mr. Abdul-Salaam was not punished based on his conduct when working with Ms. Laudano because "if defendant had punished Salaam in the first Laudano incident, it would have been compelled . . . to punish Laudano." *Id.* at 22.

As to Mr. Clancy, Ms. Hampton argues Mr. Clancy engaged in similar conduct when he "watched as an inmate deliberately left a recreation area, crossed a grassy area and stationed himself . . . near a fence" and then used only verbal commands when the inmate climbed the fence. *Id.* at 24. In Ms. Hampton's view, because Mr. Clancy was not suspended, terminated or disciplined in any way, he is properly considered a similarly situated individual whose different treatment raises an inference of discrimination. *Id.* at 25.

In their reply, Defendants argue that Ms. Hampton does not have any comparators because she "has not offered a single comparator who was permitted to keep their job despite not pursuing a juvenile detainee who was attempting to escape." Reply at 7. Defendants emphasize that Ms. Hampton cannot rely on her "own misguided interpretation of policy" to support her argument that Ms. Laudano violated the Judicial Branch's policy by pursuing the escaping

juvenile. *Id.* at 8. As it relates to Mr. Clancy, Defendants emphasize that the undisputed evidence in the record establishes that Mr. Clancy resigned before the Judicial Branch investigation was complete and Ms. Fuller stated she would have recommended that he be terminated based on his conduct. *Id.*

The Court agrees.

"An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Johnson v. L'Oréal USA*, No. 21-2914-cv, 2023 WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (summary order) (quoting *Ruiz*, 609 F.3d at 493–94). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Ruiz*, 609 F.3d at 494.

"When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." *Harrison v. Port Authority of N.Y. & N.J.*, No. 17cv6281, 2020 WL 1233637, at *6 (S.D.N.Y. Mar. 13, 2020) (quoting *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 464 (S.D.N.Y. 2006)); *see also Barney v. Consol. Edison Co. of N.Y.*, 391 F. App'x 993, 996 (2d Cir. 2010) (no reasonable jury could find that plaintiff was similarly situated to coworker, where plaintiff "intentionally entered false overtime data in order to receive more pay and then attempted to cover it up," and the coworker "merely failed to review [plaintiff's] overtime entries correctly").

While the question of "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury," *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), "this rule is not absolute and a court can properly grant summary judgment where it is clear that

no reasonable jury could find the similarly situated prong met," *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007) (internal quotation marks omitted).

Ms. Hampton's two comparators, Ms. Laudano and Mr. Clancy, are not similarly situated to her and therefore do not create an inference of discrimination.[8] First, while Ms. Hampton emphasizes the similarities between her and Ms. Laudano's situations by pointing to the similar contexts, an "off[-]site non secure medical facility," and the similar juvenile conduct, attempted escape after the juvenile removed his restraints while using the restroom, *see* Opp'n at 2324, Ms. Hampton's and Ms. Laudano's conduct was materially different. Ms. Laudano used force and succeeded in preventing the juvenile's escape, Pl.'s SOMF at 24–25 ¶¶ 80–83; Ex. 4 to Opp'n, ECF No. 104-6 ("Laudano Incident Rep."),[9] whereas Ms. Hampton did not intervene other than by attempting to verbally deescalate the juvenile, and the juvenile was able to walk out of the medical facility, remaining out in the public for twenty-eight days, Pl.'s SOMF at 14 ¶¶ 21–22, 25–27; *id.* at 17–21 ¶¶ 28–31, 40–46, 55.

No reasonable juror could find that Ms. Laudano's conduct bore "a reasonably close resemblance," *Ruiz*, 609 F.3d at 494, to Ms. Hampton's conduct because Ms. Hampton's conduct was objectively more serious. *See Harrison*, 2020 WL 1233637, at *6 n.2 (finding that a potential comparator did not engage in similar conduct where the plaintiff accidentally drove a

---

[8] The parties do not dispute that Ms. Hampton's proffered comparators were subject to the same disciplinary standards, Mot. at 4–8 (focusing their comparator argument on whether the conduct was sufficiently similar); Opp'n at 26 ("The . . . comparators, but for their race and color, are identical in position, duty, responsibility, and all other material respects . . . ."), and therefore, the Court focuses on the relevant conduct.

[9] More specifically, after the juvenile refused to be re-restrained during a medical appointment, he pushed Ms. Laudano and ran into the parking lot of the medical center. Laudano Incident Rep. at 1. Ms. Laudano ran after the juvenile, verbally attempted to deescalate the situation, and, when that was not successful, called emergency services. *Id.* When the juvenile tried to climb the fence, Ms. Laudano tried to physically "help" the juvenile back to the ground, after which point the juvenile kicked Ms. Laudano and ran off. *Id.* Ms. Laudano again chased the juvenile and, "after several attempts of placing this juvenile in an upper torso [restraint] during the chase," Ms. Laudano and Mr. Abdul-Salaam were successful in bringing the juvenile to the ground and re-restraining the juvenile in handcuffs. *Id.*

patrol truck onto the airfield causing an aircraft to abort its landing and the comparator

"consciously turned off his vehicle's radio communication . . . and drove around the airfield

while listening to music on his iPod," which the court found was objectively more serious than

the plaintiff's misconduct); *Villar v. City of New York*, 135 F. Supp. 3d 105, 121 (S.D.N.Y.

2015) (finding the plaintiff's comparator's conduct was not sufficiently similar where the

plaintiff shared confidential NYPD information with a civilian and the comparator shared

confidential NYPD information with a higher-ranked member of the NYPD because the

plaintiff's misconduct was objectively serious).

      Second, as it relates to Mr. Clancy, even if Mr. Clancy's conduct could be considered

comparable to Ms. Hampton's conduct, Mr. Clancy cannot be a comparator because the Judicial

Branch did not discipline him before he resigned. Def.'s SOMF ¶ 91; Pl.'s SOMF ¶ 91.[10]

Moreover, the Judicial Branch investigated Mr. Clancy's misconduct just as it investigated Ms.

Hampton's misconduct. *See* Def.'s SOMF ¶ 91–92; Pl.'s SOMF ¶ 91. In this sense, Mr. Clancy

"did not fare any better" than Ms. Hampton except that Mr. Clancy chose to resign before the

Judicial Branch completed its investigation. *See Smith v. AFSCME Council 4*, No. 3:08-CV-1735

---

[10] While Ms. Hampton denies this factual allegation, she has not offered any factual basis that contradicts the assertion that Mr. Clancy was under investigation but resigned before the Judicial Branch made a final employment decision. *See* Pl.'s SOMF ¶ 91. Therefore, this fact is deemed admitted. *See Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 229 (D. Conn. 2013) ("Where the Plaintiff has objected to Defendant's facts but has failed to support her objection with any admissible evidence in the record, where the record itself does not support Plaintiff's denials, or where the Plaintiff has neither admitted nor denied a fact and where the record supports such fact, those facts are deemed to be admitted.").

Additionally, to the extent Ms. Hampton raises a hearsay objection to the affidavits supporting certain factual assertions, the objection is misplaced because the statements in the cited affidavits are not hearsay. More specifically, Defendants' reasons for making certain disciplinary decisions would be admissible to show Defendants' state of mind, rather than for the truth of the matter asserted, and the individuals' review of internal records is sufficient to establish personal knowledge at this stage. *See Capitol Records, LLC v. Vimeo*, LLC, 972 F. Supp. 2d 500, 508 n.7 (S.D.N.Y. 2013) ("[R]eview of relevant business records by qualified affiant satisfies personal knowledge requirement of Rule 56."), *aff'd in part and rev'd in part on other grounds,* 826 F.3d 78 (2d Cir. 2016).

(RNC), 2012 WL 3580285, at *14 (D. Conn. Aug. 17, 2012) (finding the comparator "did not

fare any better than plaintiff" because the comparator "resigned after being notified that her

removal was imminent"). Therefore, Mr. Clancy is not similarly situated in "all material

respects." *Graham*, 230 F.3d at 40; *see also Testagrose v. N.Y.C. Hous. Auth.*, 369 F. App'x 231,

232 (2d Cir. 2010) (finding the comparator was not similarly situated to the plaintiff, who was

terminated by her employer, because the comparator "resigned before the disciplinary hearing").

Accordingly, Ms. Hampton has not provided any comparator evidence and no reasonable

juror could find that the evidence in the record supports an inference of discrimination.

### b. Pretext[11]

Even if Ms. Hampton were able to satisfy her burden as to the prima facie case, no

reasonable juror could find Defendants' reason for terminating her to be pretextual.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to

"articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp.*,

411 U.S. at 802. If the defendant puts forth such a reason, "the presumption raised by the prima

facie case is rebutted and drops from the case." *Kovaco v. Rockbestos-Surprenant Cable Corp.*,

834 F.3d 128, 136 (2d Cir. 2016) (internal quotation marks omitted). "The plaintiff then bears

the ultimate burden to show that the employer's proffered reason was merely a pretext for an

unlawful motive." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88–89 (2d Cir. 2019) (internal

---

[11] The parties appear to agree that Defendants have put forth sufficient evidence to support their legitimate, non-discriminatory reason for terminating Ms. Hampton, her violations of the Judicial Branch policy. *See* Mot. at 10–11; Opp'n at 28 (declining to address whether Defendants met their burden and instead, arguing the reasons offered were pretextual); *see also Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 770 (E.D.N.Y. 2018) (holding defendants met burden to demonstrate legitimate reason for termination where they produced evidence that the plaintiff, a teacher, "was suspended and ultimately terminated because of a series of serious allegations regarding the mistreatment of students, which was reported by multiple employees"); *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14 (2d Cir. 2018) (holding that the employer met its burden of giving a legitimate, non-discriminatory reason for terminating the plaintiff where employer produced evidence that the plaintiff "was terminated in part for violating [the employer's] attendance policy, outlined in its employee handbook"). Therefore, the Court focuses this section on the question of pretext.

citations and quotation marks omitted). A plaintiff may carry this burden by reference to the same evidence used to establish a prima facie case, provided that the evidence admits plausible inferences of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Defendants argue that Ms. Hampton cannot demonstrate their reason for terminating her was pretextual. Mot. at 11. In Defendants' view, the pertinent question is not whether Ms. Hampton in fact violated the Judicial Branch policy, but instead it is whether Defendants "did not genuinely believe" that Ms. Hampton violated the policy. *Id.* at 11–12 (internal quotations and citation marks omitted). Defendants argue that Ms. Hampton's "subjective belief that her actions were reasonable" is insufficient because that belief does not negate the evidence in the record about Defendants' motivations when they decided to terminate her. *Id.* at 12.

In response, Ms. Hampton argues that the reasons Defendants offer for terminating her "differ . . . in [the] Memorandum, and the actual reasons set forth in the Letter of Termination." Opp'n at 29. In Ms. Hampton's view, she followed the Judicial Branch policy, which is meant to "elevate the safety, privacy and personal integrity rights of the juvenile inmate above the absolute prevention of escape." *Id.* Ms. Hampton argues that the Judicial Branch policies, as written, allow for discretion and require reasonableness, which, in her view, she properly followed under the circumstances. *Id.* at 30. Ms. Hampton emphasizes that physical force is a last resort and should only be used when reasonable. *Id.*

Additionally, Ms. Hampton states that the DCF investigation, which Defendants relied on in part when deciding to terminate her, was subsequently overturned. *Id.* In Ms. Hampton's view, this is further evidence of pretext because, a year after she was terminated, an arbitrator reviewed the DCF findings and held that the Judicial Branch "lacked just cause" to terminate Ms. Hampton and ordered that she be reinstated. *Id.* at 31.

Finally, Ms. Hampton points to other instances in which she has alleged the Judicial

Branch discriminated against her as evidence of pretext. *Id.* More specifically, Ms. Hampton

stated that she was wrongfully terminated in 2010 and the Connecticut Commission on Human

Rights and Opportunities ("CHRO") restored her employment in 2011. *Id.* Ms. Hampton also

relies on a CHRO complaint of racial discrimination she submitted on October 20, 2021, after

the Complaint was filed in this case. *Id.* Ms. Hampton also argues that the fact that she has never

been promoted in fourteen years, despite applying to sixty-three internal positions, is further

evidence of pretext and discriminatory motives. *Id.* at 31–32.

In their reply, Defendants first argue that a jury need not decide whether Ms. Hampton

"acted in conformity with Defendant's policies" because "Title VII may not be used as a vehicle

for second-guessing an employer's business judgment." Reply at 9. Instead, Defendants argue

that "even assuming arguendo that Plaintiff's wholly uncorroborated claims are to be believed,

her case must still be dismissed because she has not offered any evidence that Defendant has

held her to a different standard than that of similarly situated employees outside her protected

class." *Id.* at 10.

Defendants next argue that Ms. Hampton has not put forth any evidence of pretext

because "it is undisputed that the Termination Letter referenced the policies that Plaintiff

violated" and, although it did not include specific subsections of those policies, this "does not

automatically convert Defendant's legitimate non-discriminatory reasons into false and

discriminatory ones." *Id.* Defendants note that the Second Circuit has held that "where an

employer's stated reasons are merely variations on the same theme, they are not inconsistent and

thus are insufficient to establish pretext." *Id.*

Defendants also argue that its reliance on the DCF findings cannot be evidence of pretext

because "the DCF investigation was independent, and Defendant did not have a role in the decision-making process." *Id.* at 12. In Defendants' view, the fact that the DCF findings were later overturned cannot, without more, constitute evidence of pretext. *Id.*

The Court agrees.

There is no genuine issue of material fact on the issue of pretext in the record before the Court. First, there is no meaningful difference in the reasons offered for Ms. Hampton's termination in the Termination Letter and Defendants' memorandum in support of their motion for summary judgment. More specifically, the Judicial Branch termination letter states that Ms. Hampton was terminated because she "committed serious violations of CSSD Policy 8.308, . . . CSSD Policy 8.304, . . . , and CSSD Policy 2.11 . . . ." Ex. 3 to Opp'n, ECF No. 104-5 ("Termination Letter"). Similarly, Defendants argue Ms. Hampton was terminated for violating 8.308(4)(G)(3), 8.308(4)(C)(9), 8.308(J)(1), and 8.304(5)(B). Defs.' SOMF ¶¶ 15, 45, 49, 53. The more specific citations to subsections included in Defendants' motion for summary judgment are consistent with the policy sections cited in the termination letter and therefore, this is not evidence that Defendants' stated reasons for termination were pretextual. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir. 2001) (affirming summary judgment where the defendant offered explanations that were "variations . . . on the same theme"); *McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 60 (2d Cir. 2018) (affirming summary judgment where the defendant stated the plaintiff was terminated "due to her poor performance, [and] most particularly her failure to timely complete tasks" because the offered reasons were consistent with one another (cleaned up)).

Second, the fact that an arbitrator reviewed the DCF findings and held that the Judicial Branch "lacked just cause" to terminate Ms. Hampton does not create a genuine issue of material

fact on the issue of pretext. DCF completed its review before the Judicial Branch decided to terminate Ms. Hampton, and DCF "substantiated" that Ms. Hampton's conduct constituted physical and emotional neglect, as well as a violation of operational policies. Ex. G to Ex. D. to Mot. at 1, ECF No. 101-7 ("Arbitrator Rev. of DCF"). After reviewing the file, the arbitrator found that Ms. Hampton violated CSSD Policy 8.308, subsections (4)(G)(3), (4)(C)(9), and (3)(J)(1), CSSD Policy 8.304(5)(B), and CSSD Policy 2.11(3)(B)(1). *Id.* at 2–3. The arbitrator, however, found that a 30-day suspension was a more appropriate punishment than termination. Pl.'s SOMF ¶¶ 63, 66–67. Noticeably lacking from the arbitrator's decision is any suggestion that Defendants' decision to terminate Ms. Hampton was motivated by anything other than the belief that she violated Judicial Branch policies.

Therefore, rather than suggest pretext, this evidence reinforces Defendants' cited reasons for terminating Ms. Hampton. *See, e.g.*, *Russell v. N.Y. Univ.*, No. 1:15-cv-2185, 2017 WL 3049534, at *33 (S.D.N.Y. July 17, 2017) (finding that "the union arbitrator's determination that the emails [the plaintiff] sent to Bauman did not constitute 'just cause' to immediately terminate her" did not create an inference of discriminatory intent because, "[w]hile such an argument might have merit if the arbitrator had concluded that [the plaintiff] had not engaged in misconduct or that discrimination had played any role in her termination, that is not the case here).

Third, the other instances of discrimination Ms. Hampton cites are insufficient because they do not connect to the termination at issue in this case. Ms. Hampton testified that the CHRO complaint she filed based on her 2010 termination alleged discrimination based on gender, but she does not remember if there were allegations of racial discrimination. Hampton Dep. at 17:12–14. That complaint, therefore, cannot support an inference of discriminatory intent.

Ms. Hampton also filed a CHRO complaint in October of 2021 in which she alleged that "the Judicial Branch allowed [her] to be harassed and to experience workplace violence based on her race." *Id.* at 17:25–18:2. There is no evidence in the record, however, about whether the CHRO made any finding that the Judicial Branch was acting in a discriminatory manner. Therefore, this cannot support an inference of discriminatory intent. *See Mack v. JP Morgan Chase Bank, NA*, No. 12-CV-8181, 2016 U.S. Dist. LEXIS 44832, at *21–22 (S.D.N.Y. Mar. 24, 2016) (finding that the "[p]laintiff's evidence of prior complaints of discrimination against Jimenez . . . would not allow a reasonable jury to conclude that [the defendant's] stated rationale for disciplining and later terminating [p]laintiff was pretextual" in part because the complaints "were investigated and were not substantiated").

Ms. Hampton's argument that she was never promoted similarly fails. Ms. Hampton provided a list of sixty-three internal position applications, Ex. 6 to Opp'n, ECF No. 104-8, however, there is no evidence that Ms. Hampton was qualified for any of the positions, that the positions were offered to someone less or equally qualified from a different race. Without any information about these positions and the supposed connection to Defendants' decision to terminate Ms. Hampton, this evidence amounts to "conclusory allegations or unsubstantiated speculation," *Robinson*, 781 F.3d at 44 (citation omitted), and therefore, it cannot defeat summary judgment.

Finally, the other evidence in the record reinforces Defendants' argument that they have uniformly applied their policies to employees of all races. More specifically, Defendants did not discipline Mr. Abdul-Salaam, who identifies as Black, Def.'s SOMF ¶ 82; Pl.'s SOMF ¶ 82, despite his involvement in a juvenile's attempted escape in 2015 because he, along with Ms. Laudano, attempted to restrain the juvenile and were ultimately successful. Defs.' SOMF ¶¶ 83–

86; Pl.'s SOMF ¶¶ 83–86. Then, in the October 2016 incident with Ms. Hampton, both Mr.

Abdul-Salaam and Ms. Hampton were fired based on their conduct when the juvenile

successfully escaped. Def.'s SOMF ¶ 32; Pl.'s SOMF ¶ 32; Hampton Dep. at 158:13–23, 159–

60. Def.'s SOMF ¶ 82; Pl.'s SOMF ¶ 82. Thus, on this record, the application of Defendants'

policies, as Defendants interpreted them, resulted in Black JTOs being both terminated and not

terminated, depending on the facts of the case, undercutting, if not undermining, the notion that

Defendants' proffered legitimate, non-discriminatory reason for terminating Ms. Hampton was

pretextual.[12] *See Blaise v. Verizon N.Y. Inc.*, 804 F. App'x 68, 71–72 (2d Cir. 2020) (finding that

the defendant "proffered substantial evidence to suggest [the plaintiff] was not subject to

disparate treatment" because "[n]ine non-minority managers were also found by Verizon

Security to have improperly altered time sheets, and that conduct led to their termination," which

demonstrated that Verizon applied its policy "irrespective of race").

To the extent that Ms. Hampton relies on her statements that she believes she acted

reasonably and that she believes she was terminated based on her race as proof of pretext, her

subjective belief is insufficient to create a genuine issue of material fact about Defendants'

motivations when they terminated her. *See Ozemebhoya v. Edison Parking Corp.*, No. 02-CV-

10057 (BSJ), 2007 WL 2593008, at *7 (S.D.N.Y. Sept. 7, 2007) ("[T]he Court need not revisit

whether [plaintiff] did, in fact, violate [the employer's] policies, as plaintiff has invited the Court

to do. Instead, the Court must only determine [the employer] reasonably believed that he had

violated company policies when he was terminated."); *Karim-Seidou v. Hosp. of St. Raphael*,

---

[12] To the extent Ms. Hampton argues that the Judicial Branch gave Mr. Abdul-Salaam "a pass" for his conduct in the 2015 incident because he was with Ms. Laudano, a white JTO, Opp'n at 22, this inference is speculative and not supported by the record. *See Robinson*, 781 F.3d at 44 (stating that, to defeat summary judgment, the non-moving party must do more than "rely on conclusory allegations or unsubstantiated speculation" (citation omitted)). As discussed above, Mr. Abdul-Salaam and Ms. Laudano's conduct during the 2015 incident was meaningfully different than Mr. Abdul-Salaam and Ms. Hampton's conduct during the 2016 incident. *See supra* pp. 16–18.

No. 3:09-CV-51, 2012 WL 6628886, at *5 (D. Conn. Dec. 19, 2012) (the plaintiff's "own subjective belief[]" that he was discriminated against based on national origin and race were insufficient to survive summary judgment).

Accordingly, Defendants' motion for summary judgment will be granted as to the Title VII claim.

### B. State Law Claims

The remaining claims allege CFEPA, failure to train and supervise, and intentional infliction of emotional distress claims. Consequently, before reaching the merits of these claims, the Court must determine whether to exercise supplemental jurisdiction over them.

Under 28 U.S.C. § 1367(a),

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (citation and internal quotation marks omitted)).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122 (internal quotation marks and citation omitted); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co*., 358 F.3d 205, 214 (2d Cir. 2004))).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims." (citation omitted))

As the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still

meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction, as the sole claims conferring jurisdiction on this Court will be dismissed, as discussed above. The Court finds at this juncture that principles of comity suggest that Connecticut courts are more suited to determine the viability of Plaintiff's remaining claims.

Accordingly, the CFEPA, failure to train and supervise, and intentional infliction of emotional distress claims will be dismissed without prejudice to refiling in state court.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to the remaining federal claim, Title VII. The remaining state law claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of June, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
